**Edward D. COBB et al., Appellants,**

v.

**Downing A. THOMAS et al., Appellees.**

**No. 1046.**

Court of Civil Appeals of Texas, Tyler.

March 23, 1978.

Rehearing Denied May 18, 1978.

Jay S. Fichtner, Berman, Fichtner & Mitchell, Douglas E. Yeager, Dallas, for appellants.

William H. Avery, Charles P. Storey, Storey, Armstrong, Steger & Martin, Bert Bader, Bader, Wilson, Menaker, Cox & Branson, Dallas, for appellees.

MOORE, Justice.

This is a damage suit instituted by a homeowner against an architect and a building contractor. Appellants, Edward D. Cobb and wife, Myrajo Cobb, brought suit against appellees, Downing A. Thomas, individually and d/b/a Thomas, Booziotis & Associates, and George Sebastian, whom they employed in the capacity of an architect and a general contractor, respectively, to construct a home for them in Dallas, Texas. As grounds for a cause of action appellants alleged breach of contract, breach of fiduciary duties and negligence on the part of Thomas and Sebastian in failing to keep the construction cost of the house below the alleged agreed limit of $500,000 and in failing to complete the same by September 1970. Appellants further sought a recovery on the ground of fraud, alleging that they were fraudulently induced to enter into both the architect's contract and construction contract because of the false representations of Thomas that the house could be constructed by September 1970 at a total cost of $400,000, excluding architect's fees, landscaping and furnishing estimated at $100,000. Appellants also sought a recovery against Thomas for the amount of architect's fees paid him. Thomas and Sebastian answered, denying generally the allegations of the petition and specially denying the making of any agreement with the appellants as to the maximum cost of construction or the completion date of the house.

The cause was submitted to the jury on thirty-two special issues. The jury found, in effect, that appellants failed to discharge their burden of proof on practically all of the special issues submitted in their behalf.[1] The jury further found in favor of Thomas

1. In response to the following numbered issues the jury (1) refused to find that Thomas represented, as a fact, that the total cost of the house, including all fees, construction, landscaping and furnishings was $500,000; (7) found that Thomas underestimated the probable construction cost but (8) failed to find such conduct was negligence; (10) found Sebastian underestimated the probable construction cost but (11) such was not negligence; (13) found Thomas failed before construction work commenced (A) to prepare project designs, project working drawings and project specifications for a residence with a total cost of not more than $500,000 and (C) to advise the appellants that the residence could not be completed by September 1970, but (14) that such failures did not constitute negligence; (16) found Sebastian

and Sebastian on all defensive issues submitted in their behalf.[2] After appellants' motion for judgment non obstante veredicto had been overruled, the trial court entered a take-nothing judgment against appellants. After their motion for a new trial had been overruled, appellants perfected this appeal.

We affirm.

Before discussing appellants' points of error, a statement of the factual background will be necessary. In August 1968, appellants were on a year's vacation in Spain. While there, Mrs. Cobb contacted appellee, Downing Thomas, by letter, advising him that they were planning to build a new home in Dallas. The record shows that, several years prior to this time, appellants had employed Thomas and Sebastian to do an extensive remodeling job on a home which they owned in Dallas. Having been satisfied with their work on the previous job, appellants were anxious to retain them to do the work on their proposed new home. In a lengthy letter Mrs. Cobb described, in detail, the type of house she wanted. She detailed the type of construction of both the exterior and interior; the design of the floor plan, both up and downstairs; the number of rooms, including closets and built-in cabinets; the location of the swimming pool; the type of material desired, as well as many other details. She stated in the letter: "You will design it, George Sebastian will build it, Clarence Holbrook will do the pool, Dick Heiderich will landscape it, and it will be all ready for us on August 1, 1969, when we get back. O.K.?" Mrs. Cobb further stated in her letter to Thomas that she wanted the house to be dramatic: "This could be your masterpiece . . . I know it will be the best house in Dallas." She mentioned nothing with regard to the cost of construction. In conclusion she advised Thomas that they were waiting to see what he could come up with. Shortly thereafter, Thomas commenced making floor plans and sketches of the house and mailed them to appellants in Spain. In November of 1968 appellants decided to stay an extra year in Spain and Mrs. Cobb wrote Thomas that the house would not be needed until September 1970. Thereafter, in December 1968, appellants came to Dallas and met with Thomas. Mrs. Cobb testified that up until that time the cost of construction had not been discussed and that she had only told him that she did not want a house as large as the house he had remodeled for them previously.

---

failed, before construction commenced, to advise appellants that the building, pool and concrete work could not be completed for a maximum amount of $400,000 but (17) that such failure did not constitute negligence.

2. In response to the following numbered issues the jury found that (19) appellants' statements reasonably led Thomas to conclude that design and artistic factors were of more importance to appellants than completing the house within the original cost estimate; (20) Thomas designed the house substantially in accordance with details specified by appellants; (21) appellants failed to exercise reasonable care to control costs in the following respects: (A) in selecting material, finishes, hardware and equipment; (B) in failing to enter into a written contract for a total specified amount; (C) in executing a "cost plus" contract; (D) in causing the job to be slowed and shut down when they returned from Europe; and (E) in failing to make a contract for a fixed specified price on recommencement of construction in May 1971; (22) their failure to exercise reasonable care to control the costs was a proximate cause of appellants' financial loss; (23) appellants voluntarily paid Thomas for all architectural services with full knowledge of the facts and not as a result of fraud or duress by Thomas; (24) appellants, up to the time they moved in the house, paid, without protest, all architectural charges, but (25) such payment without protest did not constitute a waiver of their claim that Thomas failed to comply with the contract; (26) the statements and actions of the appellants caused or led Thomas to believe that they were satisfied with his services; (27) but for such belief Thomas would not have continued to render his services; (28) Sebastian was authorized by Thomas to perform construction work in excess of $400,000; (29) the amount appellants paid in excess of $400,000 to Sebastian was paid without protest; (30) when construction work was recommenced in April 1971 appellants knew construction costs would exceed $400,000; (31) the damages proximately caused appellants by Thomas as a result of negligence was "none"; and (32) the damages proximately caused appellants by Sebastian as a result of negligence was "none."

On December 6, 1968, appellants signed a contract with Thomas to produce the designs, plans and specifications for the construction of the house and to supervise construction. The contract was on an American Institute of Architects' printed form and provided that he was to be compensated on an hourly rate charge. The agreement contained nothing with regard to the maximum cost of construction, nor is there anything in the agreement to indicate that Thomas promised completion of the house by September 1970. Section 3.4 of the written agreement provides as follows:

"Statements of probable construction cost and detailed cost estimates prepared by the architect represent his best judgment as a design professional familiar with the construction industry. It is recognized, however, that neither the architect nor the owner has any control over the cost of labor, materials or equipment, over the contractors' method of determining bid prices, or over competitive bidding or market conditions. Accordingly, the architect cannot and does not guarantee that bids will not vary from any statement of probable construction cost or other cost estimate prepared by him."

The agreement further provided that it could be amended only by written instrument signed by both the owner and the architect. On February 16, 1969, appellants again returned to Dallas, at which time they met with Thomas and Sebastian to discuss construction. By that time Thomas had designed a three-story house and had submitted the plans to Sebastian for an estimate of the cost. Sebastian advised appellants that the total cost of the house would be $558,808, including $100,000 for architect's fees, etc. Appellants concluded that the price was too high and stated that they did not desire to spend over $500,000, including $100,000 for the architect's fees, etc. Thomas was instructed to get new cost estimates. Appellants went back to Spain and on August 2 Thomas called them and told them it would not be possible to cut the cost. He stated that they could start construction under the present plans for $600,-000, or by eliminating some items could start at that time for $555,000, or by eliminating the third floor and reducing one wing they could start in about a month or six weeks with a total cost of $525,000. Appellants advised that their budget was $500,000 and invited him to come to Spain at their expense to discuss cutting the size of the house. While in Spain he agreed that the house would be redesigned and cut down in size. Thomas revised the plans and, after further correspondence, called the appellants in September 1969 advising that under the revised plans "We can do it for $400,000" excluding architect's fees, etc., and quoted the exact figure which he had obtained from Sebastian in the amount of $396,619, excluding the $100,000 for architect's fees, etc. This same figure was subsequently confirmed by Sebastian by letter to appellants on October 6, 1969. After thinking it over, appellants called back and told him to go ahead. Construction was commenced in October 1969.

On March 13, 1970, appellants executed a construction contract with Sebastian and also executed a mechanic's lien note for the sum of $400,000, secured by a deed of trust. Under the terms of the contract, Sebastian was to receive as compensation for his services a contractor's fee of an amount equal to 10% of the final cost of the work. The written agreement did not mention anything with regard to the cost of construction or anything with regard to a *maximum* cost of construction. Although appellants requested Sebastian to make a bid on the house on a fixed cost basis, he refused to do so. When he refused, appellants executed the above mentioned "cost-plus" contract in which he was granted eighteen months from the date thereof to complete the structure.

When appellants returned to Dallas in August 1970, the house was nowhere ready for occupancy, and it was obvious that it could not be completed by September 1970. At this particular time, appellants suffered some unexpected financial problems and, as a result, they ordered construction slowed and then ordered it stopped completely in September 1970, except for some sub-con-

tract work. Prior to stopping the work appellants were advised that even without the stoppage the construction cost would exceed $400,000, and that by stopping construction the cost would escalate even more due to the fact that many of the subcontracts would have to be renegotiated later at higher prices due to inflation. Several months later, around May 1, 1971, appellants ordered that construction be recommenced, even though they knew then that the cost would exceed $400,000, exclusive of architect's fees, etc. Thereafter they continued to pay appellees the monthly construction cost estimates without complaint. Appellants moved in the house, still incomplete, in December 1971, after having expended approximately $660,000.

Appellants contend in their first point of error that the trial court erred in refusing to grant their motion for judgment non obstante veredicto for the sum of $81,803.57 for architect's fees paid Thomas. They contend that since the jury found that Thomas (1) underestimated the cost of the structure and (2) failed to prepare designs, drawings and specifications before construction commenced for a residence with a maximum cost of $500,000 and (3) failed to advise appellants that the project could not be completed by September 1970, Thomas breached his contractual duty and therefore they were entitled to judgment as a matter of law, despite the fact that the jury found that Thomas was not negligent. We find no merit in this contention.

The evidence shows that Thomas prepared a set of plans which were accepted by appellants, but because the costs were found to be too high Thomas was directed to revise the plans in order to come within appellants' budget of $500,000. He prepared a second set of plans which they accepted. Appellants admit that they were satisfied with his work. They now seek to recover back the fees paid him on the ground that he breached his contract in underestimating the cost and in failing to draw plans and specifications for a residence at a cost not to exceed $500,000, despite the fact that the contract made no mention of any specific cost.

In contracting for his services, an architect implies that he possesses skill and ability, and that he will exercise and apply his skill and ability reasonably and without neglect. The skill and diligence which he is bound to exercise are such as are ordinarily required of architects, and his duty depends on the particular agreement entered into with his employer. 5 Am.Jur.2d *Architects* sec. 8.

A party who proposes to build, may in his contract of employment with an architect state an amount as to the limit of cost of the building and provide that reasonable conformity to such cost shall be a condition for payment for services rendered by the architect; or, such agreement may result from a stipulation that the cost of the building proposed by the architect will not exceed a definite maximum. Where such a positive cost limitation is stipulated in an architect's contract, a substantial violation thereof will preclude a recovery of architect's fees. 5 Am.Jur.2d *Architects* sec. 17; *Bueche v. Eickenroht*, 220 S.W.2d 911 (Tex.Civ.App.—San Antonio 1949, no writ); *Moore v. Bolton*, 480 S.W.2d 805 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n. r. e.). Such rule, however, is not applicable to the situation presented here because, in the present case, there is no expressed cost limitation in the parties' agreement or contract. In this case, the architect merely agreed to do the architectural work according to the expressed wishes of the owner at an hourly compensation rate. Where the contract, as here, requires the preparation of plans and specifications for the construction of a building according to the express wishes of the owner as to the details of construction without mentioning a cost limitation, the mere nonconformity in the actual cost of construction with the amount so estimated by the architect does not amount to a breach of duty on the part of the architect and therefore forms no basis for a suit to recover the fees paid him. *Bueche v. Eickenroht*, supra. Under such circumstances the architect is entitled to compensation even though

the cost exceeds the hopes and expectations of the owner. It follows that appellants' claim for a recovery of the architects' fees paid Thomas is without foundation.

We turn now to the contention that Thomas breached a duty in failing to advise appellants, before construction commenced, that the house could not be completed by September 1970. Although there is no evidence that Thomas was ever called on to estimate the completion date, appellants take the position he knew or should have known the house could not be completed by September 1970, and, as their architect, he had a duty to disclose such fact to them. We are not in accord with this proposition.

■ We recognize the rule that an architect is duty bound to make disclosure of all matters of which he has knowledge, which it is desirable or important that his principal learn. 5 Am.Jur.2d *Architects* sec. 7.

■ We find nothing in the record showing that Thomas had any knowledge that the house could not be completed by September 1970. Not being the builder and having no control over the time factor involved, he could not reasonably be expected to know that the structure could not be completed within the time hoped for by appellants. To say he knew or should have known that the building could not be completed by that date and failed to disclose such fact to appellants would be to indulge in rank speculation. In the absence of such knowledge, Thomas would not be duty bound to make such disclosure, and therefore the alleged cause of action in this regard is without foundation. Appellants' first point is overruled.

Under the second point appellants urge that the court erred in overruling their motion for judgment n. o. v. because the evidence conclusively establishes that appellee, Thomas, was negligent as a matter of law in underestimating the probable cost of construction. We find no merit in this point.

The jury found that Thomas underestimated the probable construction cost, but found that such conduct did not amount to negligence. Although the jury found that Thomas underestimated the cost, there is no finding as to the extent of his underestimation. The evidence fails to show whether the underestimation was substantial or merely trivial. Apparently, the jury concluded that the amount of the underestimation was merely trivial and therefore did not show a lack of due care.

■ Contrary to appellants' contention, the fact that appellants eventually expended the sum of $660,000 on the building does not show, as a matter of law, that Thomas underestimated the cost by $160,000. This evidence only goes to show that appellants themselves were responsible for a substantial part of the added cost as a result of letting a contract on a cost-plus basis, adding extras and causing the construction to be suspended for a period of six months. In the absence of any evidence and any jury finding showing what the actual cost of construction would have been had appellants not let the contract on a cost-plus basis, added expensive extras and stopped construction, there is no basis for holding that Thomas was negligent as a matter of law.

■ Where the circumstances are such that reasonable minds may logically draw either an inference of actionable negligence or its absence, the issue of negligence is one of fact for the determination of the jury. 40 Tex.Jur.2d Rev., Part 2, *Negligence* sec. 153. Appellants' second point is accordingly overruled.

By the fifth point appellants complain of the action of the trial court in refusing to submit their requested Special Issues Nos. 13, 14 and 15, inquiring as to whether, before construction commenced, there was an agreement between appellants and Thomas that the maximum cost of construction would not exceed $500,000; whether Thomas breached the agreement; and, if so, the amount of damages suffered by appellants.

■ We find no merit in this point because, as pointed out before, there is no evidence that Thomas contracted or prom-

ised appellants that the cost of construction would not exceed $500,000. His only promise in this regard was to give them the "probable" cost of construction. He fulfilled his contract in this regard when he gave them the figure of $500,000. Even assuming, arguendo, that Thomas did contract that the maximum cost of construction would not exceed $500,000, the only evidence as to the cause of the excess cost points to appellants as the ones responsible for the additional cost by having added expensive extras and having suspended construction. Thus, there is no evidence to raise the issue of a breach of duty on the part of Thomas in this regard, and therefore the trial court did not err in refusing to submit the issues requested by appellants. The fifth point is overruled.

Appellants complain by their sixth point of the action of the trial court in refusing to submit their requested Issues Nos. 10, 11 and 12. These issues inquired as to whether the contractor, George Sebastian, agreed to construct the house, pool and concrete work for a maximum sum not to exceed $400,000; whether he breached his agreement; and, if so, the amount of damages sustained by appellants. We find no merit in the point.

After a careful review of the record, we have been unable to find any evidence whatever showing that appellee, Sebastian, agreed to construct the house for a maximum sum not to exceed $400,000 as contended by appellants. The evidence shows that appellants requested Sebastian to make a bid on the house on a fixed cost basis. Because the house was unique and difficult to build, Sebastian refused to make a bid on a fixed cost basis, telling appellants that if he were wrong on the estimate it would break *him* but would not hurt them. Mr. Cobb admitted in his testimony that Sebastian refused to enter into a contract for a fixed amount. He further testified that, after he refused, he entered into a written contract with Sebastian on a "cost-plus" basis with an agreed maximum of $400,000. The written contract, prepared by appellants' attorney, reads in part as follows:

". . . Owners agree and obligate themselves to reimburse Builder for all costs of the work . . . and as compensation for his services, a contractor's fee of an amount equal to ten (10%) per cent of the final cost of the work . . .."

■ There is no provision in the contract providing for a cost limitation or maximum cost at which the house was to be constructed. Presumably the contract was a final expression of the parties' negotiations. Thus, even if appellants orally negotiated with Sebastian on a "cost-plus" contract with a maximum of $400,000, when they adopted the written contract as the final and complete expression of their agreement the result is integration and the terms of the written contract control. *Baylor University v. Carlander*, 316 S.W.2d 277 (Tex. Civ.App.—Dallas 1958, writ ref'd n. r. e.). Consequently, there is nothing in the record to raise the issue of whether Sebastian agreed to construct the house, pool and concrete work for a maximum sum not to exceed $400,000. Therefore, the trial court properly refused to submit appellants' requested issues in this regard. Rule 277, Tex.R.Civ.P. The sixth point is overruled.

In their seventeenth point appellants contend the trial court erred in denying their motion for judgment n. o. v. because the evidence conclusively establishes that appellee, Thomas, failed to timely prepare project designs and specifications for the residential project, contrary to the jury's finding on Special Issue No. 13(b).

We fail to find any discussion relating to this contention in appellants' brief. The point is therefore waived. *City of Wichita Falls v. Harris*, 532 S.W.2d 653 (Tex.Civ. App.—Fort Worth 1975, writ ref'd n. r. e.).

In their seventh and eighth points appellants contend that the court erred in permitting the jury to view certain slide photographs of the subject property because such photographs were never offered in evidence. Appellants also bring forward a point contending that the photographs were inflammatory and prejudicial.

Insofar as we have been able to find, no objection was made to the photographs prior to the time they were exhibited to the jury, nor have we been able to find where appellants objected to the photographs on the ground that they were inflammatory and prejudicial.

■ It is hardly necessary to say that objections to the admissibility of evidence not taken below cannot be first heard in this court as grounds for reversing the judgment. *Hill v. Baylor*, 23 Tex. 261 (1859); *Hinsley v. Continental Trailways Bus System*, 302 S.W.2d 668, 669 (Tex.Civ. App.—Galveston 1957, no writ history). The seventh and eighth points are overruled.

By the ninth point, appellants complain of the court's ruling allowing counsel for the appellees to read to the jury portions of the deposition testimony of appellant, Edward D. Cobb, on the grounds that the deposition had not been signed or filed among the papers of the case and the portions read were not used for impeachment purposes. We find no merit in these contentions.

The record shows that at the trial appellant, Cobb, took the position that he contracted with both Thomas and Sebastian on a cost-plus basis with a guaranteed maximum as to the cost of construction. On cross examination, counsel for Thomas and Sebastian undertook to read certain questions propounded to Cobb in his deposition and then asked Cobb to read the answers he gave in the deposition. He was asked to read his previous deposition testimony showing that he had testified that neither Thomas nor Sebastian had agreed to any type of cost limitation or maximum price of construction. The portions read were clearly used for impeachment purposes to show prior inconsistent statements. It was not until after counsel for appellees attempted to offer certain portions of the deposition in evidence that counsel for appellant objected on the ground that the deposition had not been signed or filed. At that point the court promptly sustained the objection and announced that the deposition, as such, would not be admitted into evidence. During the course of cross examination, upon request of counsel for appellant, the court instructed the jury that the deposition, as such, had not been offered in evidence and was not to be considered as evidence.

■ There is no doubt that the form of the inconsistent statement used for impeachment purposes is immaterial. McCormick & Ray, Texas Evidence sec. 696. It therefore follows that it is immaterial that the deposition in question from which portions were read to impeach the witness was neither signed nor filed. See *Kampmann v. Cross*, 194 S.W. 437, 441 (Tex.Civ. App.—San Antonio 1917, writ ref'd).

■ Contrary to appellants' contention, the record clearly shows that the testimony of Edward D. Cobb given at the trial was inconsistent with the testimony which he had previously given in his deposition. He admitted that the prior inconsistent statements made in the deposition three years before trial constituted his testimony at that time. Consequently, we believe the deposition testimony was admissible for the limited purpose of showing prior inconsistent statements even though the same had not been signed or filed. It therefore follows that the trial court did not err in allowing counsel for the appellees to read portions of appellant Cobb's deposition to the jury. Accordingly, the ninth point is overruled.

Because we hold that portions of the deposition of appellant Cobb were properly read before the jury for impeachment purposes, appellants' tenth and eleventh points of error complaining of the reading of the deposition on the ground that no part of the deposition was offered into evidence are hereby overruled.

Under the thirteenth point appellants contend that the court erred in denying their motion for judgment n. o. v. because the evidence conclusively establishes, as a matter of law, that Thomas falsely represented to them that the total cost of construction would not exceed $500,000, contrary to the finding made by the jury in response to Special Issue No. 1.

**290**

An architect who makes an intentional misrepresentation as to the cost of the construction of a building according to his plans or who, in order to secure such contract, states positively that the cost of a structure desired will not exceed a specified sum, when he knows that such is not the fact, cannot recover for his services. 5 Am. Jur.2d *Architects* sec. 17.

Although the record shows that appellee, Thomas, represented to appellants that the house could be built for $500,000, in order to establish liability for fraud appellants had the burden of further showing that the representation was false, that they relied upon such representation and that they suffered damages as a result of the representation. *Morgan v. Box*, 449 S.W.2d 499 (Tex.Civ.App.—Dallas 1969, no writ history); *Banks v. Merritt*, 537 S.W.2d 494 (Tex.Civ.App.—Tyler 1976, no writ history).

As we view the record, there is no evidence showing that the statement made by Thomas that the house could be constructed for $500,000, including architect's fees, etc., was false at the time it was made. There is no evidence and no finding that the structure as designed could not have been built for $500,000, as represented by Thomas. The fact that the appellants finally expended the sum of $660,000 does not constitute evidence that the representation was false at the time it was made. The $660,000 figure represents a cost which was brought about by appellants' letting a cost-plus contract, adding expensive extras and stopping the work for six months. Consequently, appellants failed to show that the alleged representation was in fact false at the time it was made. Appellants therefore failed to establish fraud as a matter of law. The thirteenth point is overruled.

In view of our holding that appellants failed to establish a cause of action in fraud, appellants' twelfth point complaining of the manner of the submission of Special Issue No. 1 is rendered immaterial and is therefore overruled.

Under points fourteen, fifteen, sixteen, eighteen, nineteen, twenty and thirty-three, appellants attack the judgment and the jury's findings on certain issues submitted in their behalf on the ground that such findings are against the overwhelming weight and preponderance of the evidence. We have examined the record in light of these points and, after weighing and balancing all of the evidence, have concluded that none of the points are well taken and they are therefore overruled.

As we view the record, appellants failed to establish a cause of action on any of the controlling issues submitted in their behalf. Therefore, we do not reach appellants' remaining points complaining of the jury's answers to the defensive issues submitted.

The judgment of the trial court is affirmed.