**I. O. I SYSTEMS, INC., Appellant,**

v.

**CITY OF CLEVELAND, TEXAS, Bayshore Engineers, Inc., and C. Dieter Ufer, Appellees.**

No. 17638.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Dec. 18, 1980.

Rehearing Denied Jan. 29, 1981.

E. R. Norwood, Taylor & Norwood, Liberty, James H. Jasper, Cleveland, for appellant.

Karl E. Kraft, K. Eugene Kraft, Jr., Houston, for appellees.

Before DOYLE, PEDEN and WALLACE, JJ.

DOYLE, Justice.

I.O.I. Systems, Inc. (IOI) brought suit to recover $96,891.70 allegedly owed pursuant to a construction contract. IOI and the City of Cleveland, Texas (City) had entered into said contract for the construction of sanitary sewer improvements in Cleveland. Bayshore Engineers, Inc. (BEI) and C. Dieter Ufer (Ufer) designed the plans for this project and served in a supervisory capacity although they did not act as resident inspectors for the project. There was never any contract executed between BEI, Ufer and IOI.

For clarity, IOI's cause of action must be divided into two parts: 1) suit on the contract with City for which it sought the unpaid balance of $2,500; and 2) suit for extra work required because of alleged negligence on the part of City, BEI and Ufer in supplying IOI with incorrect specifications and plans which resulted in its constructing a defective sewer system. IOI subsequently corrected these defects for a cost of $91,500. Additionally, IOI also sought payment for extra material not included in the price of the original contract in the amount of $2,891.70.

The City filed a counterclaim against IOI alleging breach of contract, an accord and satisfaction between the parties, as to $91,500 claimed by IOI for extra work, and sought damages in excess of $90,000.00. Trial was to a jury, which found IOI did not substantially comply with the contract; that IOI was not entitled to any recovery except $2,891.70 for the additional cost of steel casing and fences; and that appellee City was damaged in the amount of $46,523.88. Issues regarding the negligence of Bayshore and Ufer were not answered, due to their conditional submission based on previous answers.

At the close of IOI's case and again at the close of all the evidence, IOI requested a directed verdict against City on its counterclaim based on the statute of limitations. The court overruled IOI's motion, but prior to the rendition of judgment, at IOI's request, the court disregarded the jury's answers to the special issues awarding damages to the City on its counterclaim. The court rendered judgment in favor of IOI for $2,891.70 plus interest, totaling $3,422.97. The judgment recited that IOI take nothing against BEI and Ufer, and that the City take nothing against IOI on its counterclaim. The court adjudged all court costs in City's suit against IOI against City.

The facts in this case can be simply stated. In 1973 IOI and City executed a contract to construct sanitary sewer improvements for City. During construction IOI encountered water in the trench where the pipes were to be laid. At this time, IOI realized there might be problems with this construction and requested Ufer and the City to remedy the problem. In order to correct the situation, additional fill material was needed for which neither City nor IOI would agree to pay. After pumping the visible water out of the trench, but without adding the fill material, IOI continued the project. Subsequently six breaks resulted in this pipeline. IOI fixed these breaks, receiving approximately $4,000.00 from City to pay for liners to repair the pipes. However, IOI alone spent an additional $91,000 on these repairs.

When the City agreed to pay the additional $4,000.00 it considered this to be an accord and satisfaction of all costs and claimed surprise regarding the additional $91,000.00. This project was finally certified as completed in May 1975. In August 1975, IOI filed this suit for the monetary damages.

IOI brings this appeal asserting nineteen points of error. City, Bayshore and Ufer, jointly, filed reply briefs in which they assert several cross-points of error.

By the first six points of error, IOI essentially asserts that the trial court erred by not itself interpreting the contract for the jury, establishing the obligations of the engineer and the contractor with regard to laying the pipe foundation in natural ground where such ground was unsuitable; that the trial court erred by not instructing the jury that only the engineer could determine whether the pipe should be installed other than on natural ground; that the trial court erred in refusing to disregard the jury's answer to special issue 8; and finally that the trial court erred in predicating special issues 2, 3, 4 and 5 upon an affirmative answer to special issue 1, as such issue 1 did not properly instruct the jury regarding the contract between the parties.

■ As a matter of law the trial court has the responsibility of interpreting an unambiguous contract from the language used therein. *Tower Contracting Company, Inc. v. Flores*, 157 Tex. 297, 302 S.W.2d 396 (1957); *Myers v. Gulf Coast Minerals Management Corporation*, 361 S.W.2d 193 (Tex. 1962). IOI alleges that pursuant to Article 3271a, Section 19, V.A.T.S., in order for any political subdivision of the State of Texas to enter into any public works contract, construction plans for such work must be "prepared by, and the engineering construction is to be executed under the direct supervision of a registered professional engineer...." Therefore, IOI continues, pursuant to this contract and statute, the duty of the engineer is to determine if the trench bottom is unsuitable as a sewer line foundation and, if so, prescribe the "approved" material to be used in stabilizing it. The contractor, on the other hand, is only required to comply strictly with the contract and the plans; perform additional excavation as needed; and remove water or other unsuitable material which may enter the trench.

The case of *Kansas Turnpike Authority v. Abramson*, 275 F.2d 711 (1960) is cited for the proposition that where plans and specifications have been supplied for the contractor as in the instant case, he is responsible only for following such plans and specifications. In arriving at the decision in that case, the court first construed all the provisions of the contract therein involved and concluded that even though the problems occurring in that situation resulted from the elements, the contract did not provide that the contractor should bear the unforeseen risk of the elements. In that case there were no contractual provisions "imposing some other or further obligation," on the contractor.

■ In the case at bar the contract imposed a greater liability on the contractor than the contract in the Kansas case. More than simply requiring IOI to follow plans and specifications, the instant contract made the contractor liable for conditions at the site; for conditions due to unforeseen

circumstances; and for supplying all necessary materials to install a completed sewer system. Relevant provisions of the contract are set out as follows:

## NOTICE TO BIDDERS

### 9. *Conditions of Site and Work*

Bidders should carefully examine the Plans, Specifications and other documents, visit the site of the work, and fully inform themselves as to all conditions and matters which can in any way affect the work or costs thereof. Should a bidder find discrepancies in, or omissions from the Plan, Specifications, or other documents, or should he be in doubt as to their meaning and intent, he should notify the Engineer at once and obtain clarification prior to submitting a bid. The submission of a bid by a bidder shall be conclusive evidence the bidder is fully acquainted and satisfied as to the character, quality and quantity of work to be performed and materials to be furnished.

## SPECIAL CONDITIONS OF AGREEMENT

### 10. *Existing Topography*

The natural ground contours and topographic features indicated on the drawings are based on latest topographic surveys available, and have been used to estimate quantities; however the degree of accuracy of this information shall in no way relieve the CONTRACTOR or others of any responsibility for the proper performance of the work, or obligations of the Contract Documents.

### 26. *Soil Boring Data*

The CONTRACTOR may, upon request, obtain a copy of the soil information required by the Engineer doing the design phase.

This report was obtained by and for the Engineer only and is not intended to be anything other than a guide.

Acceptance of this soil report shall in no way relieve the CONTRACTOR of his responsibility to inquire, investigate and inspect the underground conditions along the piping alignment.

## GENERAL CONDITIONS OF AGREEMENT

1.05 Work. Unless otherwise stipulated, the CONTRACTOR shall provide and pay for all materials, supplies, machinery, equipment, tools, superintendence, labor, insurance, and all water, light, power, fuel transportation and other facilities necessary for the execution and completion of the work covered by the contract documents.

3.09 Losses from Natural Causes. Unless otherwise specified, all loss or damage to the CONTRACTOR arising out of the nature of the work to be done, or from the action of the elements, or from any unforeseen circumstances in the prosecution of the same or from unusual obstructions or difficulties which may be encountered in the prosecution of the work, shall be sustained and borne by the CONTRACTOR at his own cost and expense.

### 2–06 *PAYMENT*

All items will include all material, labor, excavation, backfilling and other incidentals necessary to install the improvement.

Since the contract in question made it imperative that the bidder check the site and make any requests of the engineer regarding the site or the contract, the court did not err in refusing to submit IOI's requested instruction:

In answering this Special Issue you are instructed that the plans and specifications provide for the laying of the sewer pipe in question on natural ground foundation unless otherwise directed by the engineer, Bayshore Engineers, Inc.

Throughout this contract, responsibility was placed upon the contractor to make himself knowledgable of all circumstances surrounding this job and, if any problems arose, to present same to the engineer. Section 2.05 of the contract is clear on this point.

IOI realized that the pipe could not be laid in the wet sand and did bring this problem to the engineer's and City's attention. City then told IOI to put in the fill material. IOI asserted there was no money in the bid to pay for such material and did not fill the trench, but instead, laid the pipe directly in the wet sand.

The subject contract contained specific provisions as to how extra work and claims should be established.

### 6. EXTRA WORK AND CLAIMS

6.01 Extra Work. It is agreed that the CONTRACTOR shall perform all Extra Work under the direction of the Engineer when presented with a Written Work Order signed by the Owner. It is also agreed that the compensation to be paid the CONTRACTOR for performing said Extra Work shall be determined by one or more of the following methods:

Method (a) By agreed unit prices; or

Method (b) By agreed lump sum

No claim for Extra Work of any kind will be allowed unless ordered in writing by the Owner. In case any orders or instructions, either oral or written, appear to the CONTRACTOR to involve Extra Work for which he should receive compensation or an adjustment in the construction time, he shall make a written request to the Owner for written order authorizing such extra work. Should a difference of opinion arise as to what does or does not constitute Extra Work, or as to the payment therefor, and the Engineer insists upon its performance, the CONTRACTOR shall proceed with the work after making written request for written order, and shall keep an accurate account of the actual cost thereof.

It is undisputed that IOI did not make a written request for an order authorizing this extra work as stated. Its demand for the extra work appears for the first time in its lawsuit. In view of the fact that IOI did not comply with the contract, it was not error to submit special issue 1 as the trial court did.

IOI cites several cases for the contention that a duty is owed by the engineer to the owner and to the contractor, *City of San Antonio v. McKenzie Const. Co.*, 136 Tex. 315, 150 S.W.2d 989 (1941), and that a supervising engineer may be liable for his negligent work or supervision. *Normoyle-Berg & Assoc. v. Village of Deer Creek*, 39 Ill.App.3d 744, 350 N.E.2d 559 (1976); *United States v. Rogers & Rogers*, 161 F.Supp. 132 (S.D.Cal.1958); *A. R. Moyer, Inc. v. Graham*, 285 So.2d 397 (Fla.1973). These cases are not in point with the instant case. In *A. R. Moyer, Inc. v. Graham*, supra, the court stated:

The nature of the professional's duty, the standard of care imposed, varies in different circumstances .... In our view the extent of appellee's duty may best be defined by reference to the foreseeability of injury consequent upon breach of that duty.

■ The evidence presented in this case fails to show that City or Ufer was negligent. In contracting for personal services, an architect's or engineer's duty depends on the particular agreement entered into with his employer. *Cobb v. Thomas*, 565 S.W.2d 281 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). An engineer or an architect must use the skill and care in the performance of his duties commensurate with the requirements of his profession, and is only liable for a failure to exercise reasonable care and skill commensurate with those requirements. *Ryan v. Morgan Spear Associates, Inc.*, 546 S.W.2d 678 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e), 7 Tex.Jur.3d Architects and Engineers, § 31 (1980). IOI offered no witnesses to show that city's or Ufer's conduct was unreasonable under the circumstances, or not in compliance with the skill and requirements of registered engineers. IOI's first six points of error are overruled.

■ By the seventh and eighth points of error, IOI contends that the trial court erred in submitting special issues 12 and 17. Such issues essentially asked if IOI knew at the time it laid the pipe in question that the

trench bottom was unsuitable for the pipe; and if IOI failed to properly inspect the soil conditions in the trench area before making its bid on this job. These were factual issues and were properly submitted to the jury based on the evidence. IOI admitted during the trial that it knew the trench bottom was soft, and unsuitable as a pipe foundation. There was also testimony regarding the inspection IOI did on the work site.

The case cited by appellant of *United States v. Spearin*, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166 (1918) is not in point due to the fact that the contractor in that case was only moving a sewer pipe so that he could then build a dock. The sewer pipe broke from internal pressure. It was undisputed that the break in this pipe was not caused in any manner by the contractor, and there was no way the contractor could have prevented this break, or even been aware of the problem. The court further found that the contractor had complied with the terms of the contract and therefore could not be responsible for this event. In the case before us, it is very evident that IOI did not comply with the contract. Points of error 7 and 8 are overruled.

■ By points of error nine, ten and eleven, appellant asserts that the trial court erred in submitting special issues 13 and 20 asking whether the breaks in the sewer system were caused by IOI's failure to install fill material in the trench and if such failure by IOI was negligence. We find that the evidence adduced at the trial supported the submission and the answers to these issues. IOI had a common law duty to perform this contract with care, skill, reasonable diligence and faithfulness. *Compton v. Polonski*, 567 S.W.2d 835 (Tex. Civ.App.—Corpus Christi 1978, no writ). Points of error 9, 10 and 11 are overruled.

■ Of IOI's points of error 12 through 19, only point 14 regarding City's counterclaim for $46,577.85 will be addressed in view of our disposition of this case. In its point of error 14, IOI alleges the trial court should have granted an instructed verdict denying City's counterclaim because it was barred by the statute of limitations. It further alleges that evidence by the City concerning this counterclaim was so prejudicial that it caused the rendition of an improper verdict.

The question to be decided by this court is whether the counterclaim by the City is a matter of right or merely a remedy for appellant's breach of the contract.

City admits the counterclaim is barred if such claim is a remedy and not a right. It cites several cases for the contention that it can urge its counterclaim by way of setoff because at the time IOI filed this suit City had a subsisting claim against IOI, which claim as a matter of right cannot be barred by limitations. *Nelson v. San Antonio Traction Co.*, 107 Tex. 180, 175 S.W. 434 (1915); *Christian v. First National Bank of Weatherford*, 531 S.W.2d 832 (Tex.Civ.App. —Fort Worth 1975, writ ref'd n.r.e); *Preston v. Williams*, 427 S.W.2d 157 (Tex.Civ. App.—Eastland 1968, no writ); *Shaw v. Faires*, 165 S.W. 501 (Tex.Civ.App.—Dallas 1914, no writ). These cases basically hold that if a subsisting claim exists at the time the suit is filed, the statute of limitations is not applicable and a counterclaim may be properly urged since there is a mutuality of accounts. No such facts are present in the case before us. City's counterclaim is an independent cause of action filed more than four years after the completion of the contract, rather than a defense by way of setoff. Hence the counterclaim is barred by limitations, and the trial court properly disregarded the jury's finding on these special issues.

The judgment of the trial court is affirmed.