**Gloria ROMERO, Individually and on Behalf of the Estate of Jose Romero, Deceased, Appellant,**

v.

**PARKHILL, SMITH & COOPER, INC., Appellee.**

No. 08–93–00197–CV.

Court of Appeals of Texas, El Paso.

July 21, 1994.

Rehearing Denied Aug. 17, 1994.

---

James F. Scherr, Law Offices of James F. Scherr, El Paso, for appellant.

James A. Mounts, III, Ray & McChristian, P.C., Magdalena G. Jara, Hicks Ray McChristian, El Paso, for appellee.

Before BARAJAS, C.J., and KOEHLER and LARSEN, JJ.

## OPINION

KOEHLER, Justice.

In this summary judgment case, the primary question is whether an engineering firm employed by the City of El Paso to provide engineering services in connection with the construction of a Public Service Board sewage treatment plant, owed a duty to an employee of a masonry subcontractor, who fell through a hole in the roof of the plant and was injured. The trial court concluded that no duty was owed and granted summary judgment. We affirm.

## RELEVANT FACTS

In August 1988, the City of El Paso through its Public Service Board awarded a contract to M.A. Mortenson Company (Mortenson) for the construction of a sewage treatment plant in El Paso County, Texas. Appellee Parkhill, Smith & Cooper, Inc. (Parkhill) entered into a contract with the City of El Paso to provide engineering services for the construction of the plant. Jose Romero, deceased, was an employee of Simms Masonry, a subcontractor on the job. In April 1990, Jose Romero, while in the course and scope of his employment at the job site, allegedly fell through a hole in the roof of the plant and was injured.

Appellants Jose and Gloria Romero filed suit originally against Mortenson and Horizon Sheet Metal, Inc. (Horizon), a subcontractor. Later, the Romeros brought suit against the City of El Paso and Parkhill, alleging, among other things, that Parkhill was negligent in its supervision, control, and inspection of the construction site and that such negligence was a proximate cause of the injuries sustained by Romero. The two suits

were consolidated. The Romeros, in an amended petition, also alleged that the defendants, as members of a joint enterprise, were each jointly responsible for the acts of the others.

Parkhill filed a motion for summary judgment on the basis that Parkhill owed no duty to Jose Romero and because it had no control over the work on the job site, it was not part of any joint enterprise. The trial court granted the motion and severed the cause of action against Parkhill from the remainder of the case.

## POINTS OF ERROR

The Romeros [1] in this appeal, allege in five points of error that summary judgment was improper because: (1) there existed material issues of fact regarding whether Parkhill owed a duty of care to Jose Romero and whether a breach of such duty was a proximate cause of his injuries; (2) there existed a fact issue regarding Parkhill's right of control over the project; (3) Parkhill's attempt to shield itself from liability by contracting out its responsibility is against public policy; (4) there existed a fact issue of whether Parkhill was engaged in a joint enterprise along with the other defendants; and (5) there existed a fact issue of whether Parkhill violated OSHA safety standards.

■ In the appeal from a summary judgment, the appellate court must determine whether the successful movant in the trial court carried its burden of showing that there is no genuine issue of a material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985); *Trevino v. Corrections Corp. of America*, 850 S.W.2d 806, 807 (Tex.App.—El Paso 1993, writ denied). In deciding whether or not there is a disputed fact issue precluding summary judgment, evidence favorable to the non-movant is to be taken as true, and in that connection, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Nixon,*

---

1. Jose Romero subsequent to the filing of this appeal died on July 4, 1993. His widow, Gloria Romero, filed a suggestion of death and is now prosecuting this appeal individually and on behalf of the Estate of Jose Romero, deceased.

690 S.W.2d at 548–49. If, as in this case, the defendant is the movant and it submits summary judgment evidence disproving at least one element of the plaintiff's case, then summary judgment should be granted. *Bradley v. Quality Service Tank Lines,* 659 S.W.2d 33, 34 (Tex.1983); *Trevino,* 850 S.W.2d at 807; *Rayos v. Chrysler Credit Corporation,* 683 S.W.2d 546, 547 (Tex.App.—El Paso 1985, no writ).

 Because the trial court did not specify the particular grounds for granting the summary judgment, Romeros must establish that each independent argument advanced in Parkhill's Motion is insufficient to support the judgment. *Hernandez v. Kasco Ventures, Inc.,* 832 S.W.2d 629, 632 (Tex. App.—El Paso 1992, no writ); *Southerland v. Northeast Datsun, Inc.,* 659 S.W.2d 889, 891 (Tex.App.—El Paso 1983, no writ). For a non-movant to raise a fact issue, there must be evidence to support his assertion. See *Life Ins. Co. of Virginia v. Gar–Dal, Inc.,* 570 S.W.2d 378, 382 (Tex.1978).

### DUTY TO INSPECT, OVERSEE, AND SUPERVISE

Under their first point, the Romeros complain that a material issue of fact existed regarding Parkhill's duty of care to inspect, oversee, and supervise the construction and whether its breach of that duty was a proximate cause of Romeros' damages. Under the second point, they assert that the trial court erred in holding that Parkhill did not have a right of control over the project.

 The initial inquiry in a negligence case is whether a duty existed. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). The existence of duty is a question of law for the court to determine from the facts surrounding the particular occurrence. *Greater Houston,* 801 S.W.2d at 525. Other than to exercise his skill and care in the performance of his duties commensurate with the requirements of his profession, an engineer's duty or duties generally depend on the provisions of his employment agreement. *I.O.I. Systems, Inc. v. City of Cleveland, Texas,* 615 S.W.2d 786, 790 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.); *Cobb v. Thomas,* 565 S.W.2d 281, 286 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). An engineer is only liable for a failure to exercise reasonable care and skill in keeping with his duties and professional requirements. *I.O.I. Systems,* 615 S.W.2d at 790.

Parkhill's summary judgment proof consisted primarily of sworn copies of the two contracts, both of which describe in detail the duties and responsibilities of the respective parties. The first of these, dated April 29, 1985, is between the City and Parkhill requiring the latter to provide professional engineering services in connection with the expansion and upgrading of the treatment plant. The second is a contract dated August 8, 1988 between the City and Mortenson for the construction of the treatment plant. With reference to Parkhill's responsibilities, the Parkhill contract under Section I.A., provides that "[t]he Engineer shall serve as the Owner's professional representative in all the phases of the Project, and shall give consultation and advice to the Owner during the performance of his services." It then provides under Section I.F. for Parkhill's duties and responsibilities during the construction phase, including the following:

2. Make periodic visits to each construction site to observe the progress of the executed work and to determine in general if such work meets the essential performance and design features and the technical and functional requirements of the contract documents; the Engineer will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the work; he will not be responsible for the construction means, methods, techniques, sequences or procedures or the safety precautions incident thereto; his efforts will be directed toward providing assurance for the Owner that each completed construction contract will conform to the engineering requirements of the contract documents. . . .

 . . . . .

6. Conduct an inspection on each construction contract, to determine if it is

substantially complete and a final inspection to determine if it has been completed in accordance with the contract documents and the contractor has fulfilled all of his obligations thereunder so that the Engineer may approve, in writing, final payment to the Contractor.

7. The Engineer shall not be responsible for the acts or omissions of the contractor, any subcontractor or any of the contractor's subcontractor's agents or employees or any other person performing any of the work under a construction contract.

The Mortenson contract, in a section entitled "General Conditions of the Agreement," contained similar provisions relating to the Engineer's status, duties and responsibilities during construction, including the following:

Neither the Engineer's authority to act under this paragraph nor any decision made by him in good faith either to exercise or not exercise such authority shall give rise to any duty or responsibility of the Engineer to the Contractor, any Subcontractor, any of their agents or employees or any other person performing any of the Work[.]

Although the Parkhill contract requires it to give consultation and advice, to conduct interim and final inspections to determine if the work on the project was being substantially completed in accordance with the contracts, and to assure the City that engineering requirements were being met, no provision gives Parkhill, expressly or impliedly, any control over the manner in which the contractor, the subcontractors and their respective employees do their work. In fact, the quoted provisions of the two contracts specifically exclude any duty or responsibility in Parkhill "for the construction means, methods, techniques, sequences or proce-

dures or the safety precautions incident thereto" and it "shall not be responsible for the acts or omissions of the contractor, any subcontractor or any of ... [their] ... employees...." Parkhill's control was over the work product to assure that the plant, when completed, met all of the requirements of the plans and specifications, not over how Mortenson got the job done.

■■■ The Romeros do not point to any provision in the Parkhill contract which gave Parkhill the kind of control that would impose on it a duty to keep the premises safe for an employee of a subcontractor.[2] In their response to Parkhill's motion for summary judgment, the Romeros attached copies of the depositions of Jaime Serna (Jose Romero's foreman with Simms Masonry) and Enrique Woo, the latter being the manager of the Wastewater Systems of El Paso Water Utilities (Public Service Board).[3] Despite the fact that Mr. Woo testified that he never inspected the project, had no direct involvement with the project during its construction, had not read the Mortenson contract in detail and gave no indication that he was at all familiar with the Parkhill contract, he was asked and answered as follows:

Q. (By Mr. Scherr) Part of the contract specifications [referring to the Mortenson contract] are the safety requirements. Is that correct?

A. Yes, that's correct.

Q. There are, under general conditions, the requirements that the general contractor comply with all laws, rules and regulations for the safe prosecution of the work. Is that correct?

A. Uh-huh.

Q. Is that correct?

A. Yes, that's correct.

**2.** Strangely, the Romeros, in their brief, agree with the Parkhill's position that the "relationship between the parties was governed by the contract setting forth the duties and obligations therein."

**3.** The depositions of Jaime Serna and Enrique Woo were taken in connection with the Romeros' suit against M.A. Mortenson Company and Horizon Sheet Metal, Inc., a case that had been removed from state court to United States Dis-

trict Court, where it was pending at the time. This suit was subsequently remanded to state court in July 1992 and eventually consolidated with a similar suit which had in the meantime been filed in state court against the City of El Paso and Parkhill. Parkhill was not a party to the suit in federal court and had no one present at these depositions.

Q. So part of Parkhill, Smith & Cooper's job would be to supervise and enforce that contract's provision. Wouldn't it?

A. That's correct.

Q. So then Parkhill, Smith & Cooper had the duty to make certain that Mortenson had enforced the OSHA rules and regulations on the job site?

A. Well, Parkhill, Smith & Cooper would have to notify the prime contractor of any unsafe conditions.

Q. Okay. So part of your hiring of Parkhill, Smith & Cooper was to make sure they were inspecting and supervising the safety and performance of the job?

A. That's correct.

Aside from the fact that Mr. Woo's deposition shows him to be totally unqualified to testify as to Parkhill's duties and responsibilities under the Parkhill and Mortenson contracts, his deposition (and the deposition of Jaime Serna, as well) is not valid summary judgment evidence for several reasons. First, since Parkhill was not a party to the lawsuit for which the deposition was taken, that deposition is inadmissible hearsay as to Parkhill. TEX.R.CIV.EVID. 801; TEX.R.CIV.P. 207. Second, there is no contention that the Parkhill contract is ambiguous, nor do we find it to be so. Therefore, parol evidence would not be admissible to place a duty on Parkhill or enlarge its responsibilities in contradiction of the clear terms of the contract. *Palmer v. Liles,* 677 S.W.2d 661, 666 (Tex.

App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

■ Romeros suggest that because Parkhill was an independent contractor on the project, there is a question whether it had the same duty as the owner to keep the premises under its control safe, sufficient evidence to raise a fact issue. They cite in support of this contention *Peters v. Detsco, Inc.,* 820 S.W.2d 38 (Tex.App.—Houston [14th Dist.] 1991, writ denied); *City of Denton v. Page,* 701 S.W.2d 831 (Tex.1986); *Pena v. TXO Production Corp.,* 828 S.W.2d 188 (Tex.App.—Corpus Christi 1992, no writ). These cases [4] involving premises liability situations are inapplicable to the instant case in which there is no summary judgment evidence that Parkhill was contractually obligated to exercise, or was actually exercising, supervisory control over the project, the general contractor, the subcontractors or their employees.

The Romeros' first two points of error are overruled.

## PUBLIC POLICY ARGUMENT

■ In their third point, Romeros complain that common law and public policy considerations would be undermined by a finding which holds that Parkhill, an engineer employed to assure the City that the project would conform to requirements and contracting to act as the City's professional representative, could "contract out of liability."

---

4. In *City of Denton v. Page,* the Supreme Court held that in order for a non-owner to be liable for a dangerous condition on a premises not created by him, there must be some evidence that the non-owner was in possession and had assumed control over and responsibility for the premises. 701 S.W.2d at 835.

In *Pena v. TXO Production Corp.,* the Court held that an affidavit of an employee of an independent contractor presented sufficient evidence to raise a fact issue as to the mineral lessor's liability for the death of employee of an independent contractor, a well servicing company, to deny the mineral lessor a summary judgment. The affidavit filed in opposition to the latter's motion indicated that an employee of the mineral lessor was actually exercising supervisory control over the work on a well when an employee of the independent contractor was fatally injured by a collapsing rig. 828 S.W.2d at 191.

*Peters* is a case in which the plaintiff was a licensee, a fireman, on the premises at the request of the owner because an underground gasoline storage tank was floating to the surface, creating a dangerous situation. Detsco was an independent contract hired by the owner three months before the accident to perform a hydrostatic test on the tank to determine if it was leaking. Peters was injured when the ground over the tank on which he was standing suddenly erupted. The Court held that Detsco, which had employees present immediately before and at the time of the eruption, failed to negate by its summary judgment proof its failure to warn Peters of the danger, if its employees had actual knowledge that the ground on which Peters was standing might give way. 820 S.W.2d at 41.

The Romeros rely on *Hunt v. Ellisor & Tanner, Inc.,* 739 S.W.2d 933 (Tex.App.— Dallas 1987, writ denied) in support of this contention. This case is inapposite because it deals only with the contractual relationship between the owner and an architecture firm employed by the owner to oversee a construction project.[5] The instant case does not involve a suit by the City against Parkhill for breach of its contract. Therefore, *Hunt* has no application. Point of Error No. Three is overruled.

## JOINT ENTERPRISE

■ In this fourth point, the Romeros assert error in the granting of the summary judgment because a material fact issue exists in connection with their allegations that Parkhill was engaged in a joint enterprise with the other parties and thus was jointly liable. Romeros' response to Parkhill's motion failed to address specifically Parkhill's grounds for summary judgment on the Romeros' joint enterprise allegation, to-wit, that the contract documents clearly vest Mortenson with control of work at the job site to the express exclusion of Parkhill. Although Tex.R.Civ.P. 166a(c) requires that contentions made to defeat a motion for summary judgment are not to be considered unless expressly presented to the trial court in the non-movant's response,[6] the issue of control was sufficiently raised by Romeros' response and in fact, has been previously addressed in this opinion. Suffice it to say

that one of the essential elements of a joint enterprise is an equal right of control over the direction of the enterprise. *Shoemaker v. Estate of Whistler,* 513 S.W.2d 10, 17 (Tex.1974). As previously discussed, the Mortenson and Parkhill contracts establish, in negation of the control element of a joint enterprise, that Mortenson had primary control of the work on the project, whereas Parkhill was "to observe the progress of the executed work and to determine in general if such work meets the essential performance and design features and the technical and functional requirements of the contract documents." The Romeros have failed to present in their response summary judgment proof of equal right of control. Point of Error No. Four is overruled.

## VIOLATION OF OSHA SAFETY STANDARDS

In their fifth and final point of error, the Romeros contend that the trial court erred in granting summary judgment, in effect finding that Parkhill "did not violate OSHA[7] safety standards."

■ The Romeros contend that the uncovered hole in the roof through which Romero fell was a dangerous condition which violated OSHA standards, that Parkhill had a duty to inspect the premises and was negligent in failing to do so and in failing to warn of or correct the dangerous condition. Their

---

5. In *Hunt,* the owners of the premises on which they wished to construct a shopping center and office complex, employed appellees as project architects. The contract contained exculpatory language, including the provision that the architect "will not be responsible for the contractor's failure to carry out the work in accordance with the contract documents," language quite similar to the previously quoted paragraph I.F.7. of the Parkhill contract. The general contractor breached its contract by failing to build a parking garage in accordance with the plans and specification.

In the suit by the owners against the architect for breach of contract, the Court held that the architect was not absolved from liability occasioned by the acts and omissions of the contractor in failing to follow the plans and specifications, despite the above-quoted exculpatory provision. 739 S.W.2d at 935, 937. The *Hunt* Court concluded that this language exists to "em-

phasize the architect's nonconstruction responsibility and to make certain that the architect 'will not be responsible for the [general] contractor's failure to carry out the work in accordance with the contract documents.'" The exculpatory provision makes it clear that the architect was not to be considered a guarantor or insurer of the contractor's work but did not exculpate the architect from its own breach in failing to discharge its duty to inspect the work in progress and require the contractor to build in accordance with the plans and specifications. 739 S.W.2d at 937.

6. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979); *Bryant v. Gulf Oil Corp.,* 694 S.W.2d 443, 448–49 (Tex.App.— Amarillo 1985, writ ref'd n.r.e.); *Wiley v. City of Lubbock,* 626 S.W.2d 916, 917 (Tex.App.—Amarillo 1981, no writ).

7. Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651, *et seq.*

argument consists of three short sentences unsupported by citation to any authority, including any specific OSHA safety provisions and regulations. Failure to cite authority in support of a point of error on appeal waives the complaint. *Luker v. Arnold,* 843 S.W.2d 108, 120 (Tex.App.—Fort Worth 1992, no writ); *Malouf v. Dallas Athletic Country Club,* 837 S.W.2d 674, 678 (Tex.App.—Dallas 1992, writ dism'd w.o.j.); TEX.R.APP.P. 74(f). The point is not properly before the Court. Even so, the evidence submitted in support of the summary judgment shows that Parkhill had no control over, and owed no duty to control, job site safety and neither exercised, nor had the right to exercise, control over the employees of the contractor and the subcontractors. The fifth point is overruled.

The judgment of the trial court is affirmed.