Chad GRAHAM, Appellant,

v.

FREESE & NICHOLS, INC., Appellee.

No. 11–95–306–CV.

Court of Appeals of Texas,
Eastland.

July 25, 1996.

Rehearing Overruled Aug. 22, 1996.

Lou Ann Cloy, Spence, Moriarity & Schuster, Jackson, WY, Leon R. Russell, Law Offices of Leon Russell, P.C., Dallas, Heather Noble, Spence, Moriarity & Schuster, Jackson, WY, for appellant.

Tolbert L. Greenwood, Evelyn R. Lepold, Kevin C. Norton, Cantey & Hanger, Fort Worth, Bruce S. Campbell, McLean & Sanders, Fort Worth, David B. Kultgen, Beard & Kultgen, Waco, for appellee.

Before ARNOT, C.J., and DICKENSON and WRIGHT, JJ.

ARNOT, Chief Justice.

After he was seriously injured in an accident at work, Chad Graham brought a negligence suit against Freese & Nichols, Inc., an engineering firm.[1] The primary question in this case is whether Freese & Nichols owed a duty to Graham. The trial court granted a take nothing summary judgment in favor of Freese & Nichols and entered an order of severance. We affirm.

 Graham urges in his point of error that summary judgment was improper be-

---

1. Graham also sued ASI–RCC, Inc., his employer; the Brazos River Authority, the owner of the premises; and several of his co-employees. These causes are not at issue in this appeal.

cause there were genuine issues of material fact regarding duty and proximate cause. In order to determine if the trial court erred in granting the motion for summary judgment, we must consider the summary judgment evidence in the light most favorable to the non-movant indulging all reasonable inferences in favor of the non-movant and determine whether the movants proved that there was no genuine issue of material fact and that they were entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546 (Tex.1985); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979). In order to be entitled to summary judgment, the defendants must either disprove an element of each of the causes of action or establish an affirmative defense as a matter of law. See *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Way v. Boy Scouts of America*, 856 S.W.2d 230, 233 (Tex. App.—Dallas 1993, writ den'd).

▬ Graham contends that appellee retained sufficient control over safety to owe him a duty of care and that appellee retained sufficient control of the premises to owe him a duty. The existence of a duty is a question of law for the court to determine from the surrounding facts. *Greater Houston Transportation Co. v. Phillips*, 801 S.W.2d 523 (Tex.1990); see also *Mitchell v. Missouri–Kansas–Texas Railroad Company*, 786 S.W.2d 659, 662 (Tex.), *cert. den'd*, 498 U.S. 896, 111 S.Ct. 247, 112 L.Ed.2d 205 (1990)(recognizing that the existence of a duty is a question of law but that certain elements of duty may involve a question of fact). An engineer's duties generally depend on the provisions in his contract. *Romero v. Parkhill, Smith & Cooper, Inc.*, 881 S.W.2d 522 (Tex.App.—El Paso 1994, writ den'd). When a person assumes control over premises or the safety of premises, that person may be liable for a dangerous condition or for failing to use reasonable care in exercising his supervisory control. See *Exxon Corporation v. Tidwell*, 867 S.W.2d 19, 23 (Tex. 1993); *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex.1985).

The summary judgment evidence shows that the Brazos River Authority contracted with appellee to design plans for the modification and repair of the Morris Sheppard Dam at Possum Kingdom Reservoir and to provide on-site contract administration during the construction. The River Authority contracted with ASI–RCC, Inc. to be the independent general contractor in charge of the construction at the dam. Graham was employed by ASI–RCC. On June 6, 1991, Graham fell from a catwalk inside the dam and landed on his back. Graham sustained serious injuries and is now paralyzed below the waist.

The inside of the dam as it was originally constructed was hollow except for concrete buttresses. Between the buttresses were interior bays. Much of the renovation of the dam included filling the bays with large quantities of concrete in order to convert it into a gravity dam. In order to go from one end of the dam's interior to the other, the workers had to use either the tunnels at the bottom of the dam or the catwalk. Because the dam continued to operate during the construction, the tunnels were frequently flooded. The catwalk was suspended 60 feet above the ground in the bays and tunneled through the buttresses. The catwalk was approximately four feet wide. However, ASI–RCC built a conveyor on one side of the catwalk in order to carry concrete from one end of the dam to the other. The conveyor was enclosed in plywood and was approximately three feet tall. By constructing the conveyor, ASI–RCC narrowed the walkway on the catwalk to 16–18 inches between the conveyor and the handrail. The catwalk had no safety nets, and the conveyor apparently blocked the handrails on one side of the catwalk. There were no handrails or safety features to prevent someone from falling off of the conveyor. Graham fell when he lost his balance while climbing up onto the conveyor to allow another worker to pass.

▬ Appellee's contract reflects that appellee had no duty regarding safety at the work site. The contract between the River Authority and appellee provides in part:

> ENGINEER shall not be responsible for the means, methods, techniques, sequences, or procedures of construction selected by the Contractor, or the safety

precautions and programs incident to the work of the Contractor. Also the ENGINEER shall not be responsible for the acts or omissions of any person except his own employees and agents.

The contract further provides that this provision will not be affected by the presence of the resident project representative. The summary judgment evidence shows that the purpose of the on-site contract administration conducted by the resident project representative was to protect the River Authority from defective material and workmanship and to assure that the finished product conformed to the design specifications.

Conversely, the contract between the River Authority and ASI–RCC shows that ASI–RCC retained exclusive control over the construction procedures and the safety precautions at the work site:

> CONTRACTOR shall supervise and direct the Work efficiently with his best skill and attention. He shall be solely responsible for the means, methods, techniques, sequences and procedures of construction and safety at the site.
>
> * * * * * *
>
> CONTRACTOR shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work. He shall take all necessary precautions for the safety of, and shall provide the necessary protection to prevent damage, injury or loss to . . . all employees on the Project site and other persons who may be affected thereby.

ASI-RCC's contract also expressly states that appellee is not responsible for the means of construction or the safety precautions incident thereto.

The summary judgment evidence shows that appellee did not exercise control over the premises or the safety precautions. Although there is evidence that, at the weekly safety meetings held by ASI–RCC, appellee expressed concerns to ASI–RCC about various safety hazards and stated that they needed to be taken care of, there is nothing in the record to indicate that appellee exercised any control over these matters. Graham asserts that the evidence that appellee instructed

ASI–RCC to stop work on two separate occasions indicates that appellee exercised control over the premises and the safety of the workers. The evidence shows that appellee stopped a concrete pour in one of the bays until the excess water was pumped from the bay and that appellee stopped the workers from climbing on the concrete forms. However, there is nothing in the record to indicate that these situations dealt with safety issues rather than the quality of the work. The contract authorized appellee to issue a stop-order from the River Authority when it observed defective material or workmanship.

The court in *Romero* held that similar facts and contractual provisions created no duty on the part of an engineering firm. *Romero v. Parkhill, Smith & Cooper, Inc.,* supra. We find this case to be dispositive, and we hold that the trial court did not err in granting the summary judgment because appellee established that it owed no duty to Graham. Consequently, we need not reach the issue of proximate cause. Appellant's point of error is overruled.

The judgment of the trial court is affirmed.