**PCA HEALTH PLANS OF TEXAS, INC., Appellant,**

v.

**Bernard RAPOPORT, Ellen C. Temple, Lowell H. Lebermann, Jr., Peter R. Coneway, Robert J. Cruikshank, Reverend Zan W. Holmes, Jr., Honorable Tom Loeffler, Dr. Mario E. Ramirez, and Martha E. Smiley, Members of the Board of Regents of the University of Texas System, Appellees.**

No. 3–93–284–CV.

Court of Appeals of Texas, Austin.

Aug. 17, 1994.

Jeffery L. Hart, Cardwell & Hart, Austin, for appellant.

Dan Morales, Atty. Gen., James Todd, Asst. Atty. Gen., Austin, for appellees.

Before CARROLL, C.J., and ABOUSSIE and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

PCA Health Plans of Texas, Inc. ("PCA") filed a petition in district court for a writ of mandamus, declaratory judgment, and injunctive relief against the members of the Board of Regents of the University of Texas System ("Regents"). PCA sought enforcement of the Texas State College and University Employees Uniform Benefits Act, arguing that the Act required the Regents to include PCA as part of the University's health care plan for its employees and retirees. Tex.Ins.Code Ann. art. 3.50–3, § 4(b)(4)(D) (West Supp.1994). The district court denied the writ of mandamus and all other requested relief. We will affirm.

## BACKGROUND

PCA is a certified and federally-qualified health maintenance organization ("HMO") that has provided health care services to employees of the University of Texas at Austin ("UT Austin") since 1987. PCA's health care plan was one of the options available to UT Austin employees and retirees under the Texas State College and University Employees Uniform Insurance Benefits Act. Tex.Ins.Code Ann. art. 3.50–3 (West 1981 & Supp.1994) ("University Employees Act"). PCA is also approved to provide health care services to state employees under the Texas Employees Uniform Group Insurance Benefits Act, the statute governing health care benefits provided to all other state employees. Tex.Ins.Code Ann. art. 3.50–2 (West 1981 & Supp.1994) ("State Employees Act").

In February 1993, PCA filed its application to continue providing services to UT Austin employees and retirees for the 1993–1994 fiscal year. However, the University System Administration recommended to the Regents that the University not continue to contract for health services from PCA. In April 1993, the Regents decided not to include PCA as one of the health care options provided UT Austin employees and retirees. PCA filed a petition in district court for writ of mandamus and injunctive relief seeking to compel the Regents to contract with PCA for the 1993–1994 fiscal year. PCA also sought declaratory judgment that the University Employees Act imposed upon the Regents a mandatory duty to contract with PCA to provide health care services to University employees and retirees. *See* University Employees Act § 4(b)(4)(D). After a hearing, the trial court rendered judgment denying mandamus and all other relief requested. PCA appeals.

## DISCUSSION

In its first point of error, PCA argues the trial court erred in denying PCA's request for a writ of mandamus. A writ of mandamus is appropriate to compel public officials to perform ministerial acts. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex.1991). Mandamus is proper in this case only if the Regents of the University of Texas had no discretion to reject PCA's application to provide health care services to UT Austin employees and retirees.

The University Employees Act governs the health coverage a state university must provide its employees and retirees. The statute provides:

The institution shall select and contract for services performed by health maintenance organizations that are approved by the federal government, if available, or by the State of Texas, if available, to offer health-care services to eligible employees and retired persons in a specific area of the state.... A health maintenance organization that has been approved to provide health-care services to employees and retired persons of the state under the Texas Employees Uniform Group Insurance Benefits Act (Article 3.50–2, Vernon's Texas Insurance Code) *is qualified upon proper application to the institution to provide similar services* to eligible employees and retired persons of any institution or agency under this Act located in the same area of the state. More stringent requirements may not be imposed on health maintenance organizations under this Act than are imposed by the state or by the federal government.

University Employees Act § 4(b)(4)(D) (emphasis added). PCA asserts that because it is a health maintenance organization (HMO) approved to provide health care services under the State Employees Act, the Regents are required to contract with PCA to provide health care services to university employees and retirees as well.[1] We disagree. The plain meaning of the statute is that any HMO that has been approved to provide health care services to other state employees under the State Employees Act is also eligible to provide those services to university employees under the University Employees Act.[2] The statute does not directly state, nor even imply, however, that all HMOs that have met the requirements of the State Employees Act are *entitled* to provide similar services to university employees and retirees. The University Employees Act confers discretion upon the Regents to *select* from among approved applicants; the discretion to select includes the discretion to exclude a qualified HMO option. While the ERS selects the

health plan options for all other state employees, the governing regents of state universities have been given the discretion to select a separate health plan for each institution. The scope of the Regents' discretion is not restricted to the choices made by the ERS; otherwise there would be no purpose in affording these institutions the option of designing comparable but distinct health care benefits.

■ PCA maintains that the University Employees Act removes the Regents' discretion to exclude ERS-approved HMOs. When the statute declares that ERS-approved HMOs are *qualified*, PCA argues the term means more than approved; it means *entitled*. In support of this interpretation, PCA argues that unless "qualified" is read to confer entitlement, the sentence denominating ERS-approved HMOs as qualified becomes meaningless. PCA correctly states that "every word in a statute is presumed to have been used for a purpose" and that every sentence, clause, and word in a statute is to be given effect if reasonable and possible. *Perkins v. State*, 367 S.W.2d 140, 146 (Tex. 1963).

We recognize that all ERS-approved HMOs are necessarily state or federally approved, and therefore fall within the class of HMOs mentioned in the first sentence of the statutory provision. *See* State Employees Act § 5(e). We agree that the sentence stating they are "qualified" to provide services must confer some additional rights upon, or recognize some difference between, ERS-approved HMOs and all other HMOs. If this were not the case, a separate sentence dealing with other state or federally approved HMOs would indeed be meaningless. However, we do not agree that ERS-approved HMOs have the *right* to contract with UT Austin, depriving the University of its discretion to accept or reject any approved HMOs. Rather, the distinction between the two classes of HMOs is that ERS-approved

---

1. PCA points to a 1987 Attorney General opinion in support of its interpretation of the statute. *See Op.Tex. Att'y Gen. No. JM–744* (1987). We conclude that this opinion does not address the question presented in this appeal and thus lends no support to PCA's position.

2. We will refer to these HMOs as "ERS-approved" because they have met the requirements set forth in the State Employees Act and have been selected by the Employee Retirement System to provide health care services to state employees pursuant to that Act.

HMOs have already gone through the approval process necessary to be selected as a health provider to other state employees, which includes examination of their bidding contracts for certification of actuarial soundness by the State Board of Insurance. *See* State Employees Act § 5(a). Upon request by the University, HMOs seeking to provide services under the University Employees Act must submit to a similar evaluation. *See* University Employees Act § 4(b)(4)(B). The statute recognizes that once an HMO has been screened by the State Board of Insurance, a second evaluation and certification of actuarial soundness is unnecessary. The statute therefore provides that ERS-approved HMOs are not required to submit to another such examination in order to be eligible to contract with a state university. In this sense, HMOs approved to provide services to state employees are already "qualified" to provide similar services to university employees; all other HMOs must still have their bidding contracts evaluated and certified as to actuarial soundness by the State Board of Insurance if the university so requests. University Employees Act § 4(b). We conclude that an HMO that "is qualified ... to provide similar services" is an HMO that has already been screened by the State Board of Insurance pursuant to the State Employees Act; therefore, a qualified HMO need not go through a second screening process to be eligible to provide similar services under the University Employees Act. However, being qualified to provide health care services does not guarantee a provider a contract with a state university. The statute only requires the Regents to select an HMO from the pool of eligible providers; it does not require them to select *all* qualified providers.

This reading of the statute comports with the legislative purpose in enacting a separate insurance benefits act for Texas state college and university employees. The statute is designed to give institutions of higher education broad discretion in fashioning an employee health care plan. The statute permits the University to "design a plan around existing local conditions." University Employees Act § 4(b)(1). The plan at issue in this appeal was designed to meet the local conditions of the employees of UT Austin. The health care benefits chosen must be "comparable," rather than identical to, those provided employees of other agencies of the State of Texas. *Id.* If the effect of the statute were to require the University to contract with all HMOs selected by the ERS under the State Employees Act, a separate statute governing institutions of higher learning would be pointless. The very fact that the legislature has permitted educational institutions to design a program different from that provided all other state employees demonstrates its intent that these institutions should have autonomy in decisions about employee health care coverage. Because the statute does not require that the Regents contract with PCA to provide health care services to UT Austin employees and retirees, the trial court properly denied PCA's writ of mandamus. The first point of error is overruled.

■ In its second point of error, PCA asserts the trial court erred in failing to award injunctive relief insuring that PCA's health maintenance organization health care plan is fairly presented as a health care option to UT Austin employees for the 1993–1994 fiscal year. The trial court's final judgment renders moot any request for temporary injunctive relief. *See Isuani v. Manske–Sheffield Radiology*, 802 S.W.2d 235, 236 (Tex.1991). To obtain permanent injunctive relief, PCA must establish that the Regents acted improperly. *See University Interscholastic League v. Buchanan*, 848 S.W.2d 298, 301 (Tex.App.—Austin 1993, no writ). PCA argues that section 4(b)(4)(D) imposes upon the Regents a mandatory, nondiscretionary duty to contract with PCA. They contend that the Regents acted improperly when they violated this statutory duty. Because we have rejected the argument that the University Employees Act requires the Regents to contract with PCA, we overrule PCA's second point of error.

## CONCLUSION

We hold that under the University Employees Act, the Regents have the discretion to select or reject eligible, qualified HMOs, even those providing health care services to state employees and retired persons under

the State Employees Act. Accordingly, we affirm the trial court's judgment.