CBI NA–CON, INC., Appellant,[1]

v.

UOP INC., Appellee.

No. 01–96–00819–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 31, 1997.

Rehearing Overruled Jan. 20, 1998.

---

1. Although Chicago Bridge and Iron Company is named in UOP's motion for summary judgment, the parties concede that Chicago Bridge and Iron Company did not file a claim against UOP in the trial court and therefore was incorrectly named in the motion for summary judgment and on appeal as a party.

Before TAFT, MIRABAL and WILSON, JJ.

## OPINION

TAFT, Justice.

In this case we determine whether an engineering firm can by contract derivatively limit its liability to reperformance. This case arises from a summary judgment in favor of appellee, UOP Inc. (UOP), against appellant, CBI NA–CON, Inc., (CBI). The summary judgment is based upon CBI's third-party claim against UOP for contribution. CBI contends "the trial court erred in granting UOP summary judgment because the pleadings demonstrate that CBI is entitled to pursue its contribution claims under Chapter 33, Texas Civil Practice and Remedies Code." TEX. CIV. PRAC. & REM.CODE ANN. ch. 33.[2] We affirm.

### Background

Fina, plaintiff in the trial court, entered into a contract with UOP. Under the contract, Fina purchased the rights to use the design and technology for a catalytic cracking unit from UOP, the original designer and licensee. UOP furnished Fina with engineering design specifications, including designs for a fluidized catalytic cracking unit (FCCU) and other related services. UOP did not have a contract with CBI, or any other defendant below. Fina contracted with CBI to construct a catalyst cooler which was part of the FCCU. Fina also entered into contracts with other parties, including the defendants in the trial court, to modify the design, inspect, install, fabricate and manufacture certain components of the catalyst cooling unit.

The FCCU was constructed at Fina's Port Arthur refinery. The catalyst cracking unit stopped operating properly, because the catalyst cooler failed. After the unit failed, Fina filed suit against four CBI-related com-

Ronald Restrepo, Stephen H. Lee, Houston, for Appellant.

Lee L. Kaplan, Houston, for Appellee.

**2.** CBI filed its third-party petition against UOP on April 8, 1994. Therefore, the 1987 version of Chapter 33 of the Texas Civil Practice and Remedies Code applies to this case. [hereinafter chapter 33]. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 33.001 (Vernon Supp.1997) (historical and statutory notes). Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, §§ 2.03—2.12, 1987 TEX. GEN. LAWS 40, 40–44, *amended by* Act of May 4, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 TEX. GEN LAWS 971, 971–75. Except as otherwise noted, all citations to chapter 33 and its sections refer to the 1987 act.

panies, two Foster Wheeler-related companies, but not UOP, to recover damages in replacing the catalyst cooler and for consequential damages suffered until replacement of the catalyst cooler. Fina sued for $17,450,000 in damages

Fina made claims against the defendants for negligence, breach of contract, breach of warranty, and strict products liability. Fina requested damages for the physical damage to the catalytic cracking unit and for lost profits and increased costs due to failure of the unit. Fina alleged CBI acted negligently and breached warranties in connection with the construction of the catalyst cooling unit. CBI and Foster Wheeler filed cross-claims against each other for contribution and/or indemnity.

CBI filed a third-party claim for contribution against UOP. CBI alleged that the catalyst cooling unit and installation procedure were designed by UOP; and the damages Fina complains of, in whole or in part, were caused by UOP's defective or negligent designs. CBI also requested contribution from three other corporations [3] not involved in the original action, who are not parties to this appeal. The claimed right of contribution was contingent on a judgment being entered in favor of Fina against CBI.

UOP filed a motion for summary judgment against CBI. UOP claimed (1) CBI's ability to seek contribution is limited to chapter 33, the "comparative responsibility" statute, (2) because Fina would have no cognizable claim against UOP under chapter 33, CBI has no right to contribution from UOP; and (3) CBI cannot defeat the limitations of UOP's contract with Fina, via a contribution claim.

UOP relied on the pleadings and its contract with Fina as its summary judgment evidence. The relevant contract provisions state:

Article 7(a):

*UOP's total liability in the event of any breach* of the foregoing warranty, or otherwise for any losses, damages, claims or demands arising out of the work and ser-

vices performed under this agreement, *shall be limited to reperforming, at UOP's expense, that portion of the work and services for which such breach or otherwise has occurred* and provided that any such claim or demand shall be made in writing to UOP prior to the termination of this agreement with respect to such Unit.

Article 7(e):

UOP shall not be responsible or liable for defective material and equipment. UOP shall not be responsible or liable for property damage or bodily injury arising out of the work or services performed under this agreement *unless caused by the willful acts or negligence of UOP. Except as otherwise provided in Article 7, UOP shall not be liable for or obligated in any manner to pay any losses, damages, claims or demands arising out of the work or services performed by it under this agreement.*

Article 7(f):

*In no event,* whether occasioned by a breach of warranty contained in this agreement, or by any other cause, whether based upon, or sounding in, *contract, tort, negligence,* strict liability, willful and wanton conduct, warranty (express or implied), or otherwise, arising out of, or relating to, the work and services performed under this agreement, or otherwise, *shall UOP be liable or obligated in any manner for special, consequential or indirect damages, including* by way of example but not by way of limitation, such damages as *loss of use, loss of profits, plant or unit downtime, or suits by third parties.*

(Emphasis added.)

On September 28, 1995, the trial court granted UOP's amended motion for summary judgment against CBI. The trial court severed CBI's claims against UOP, and this appeal followed.

In CBI's sole point of error, it contends the trial court erred in granting UOP summary judgment because the pleadings demonstrate that CBI is entitled to pursue its

---

**3.** The parties included: Zydex—modified design of catalyst cooling unit, which failed, inspected unit and modified installation procedure; Hughes Anderson—fabricated catalyst cooling unit; Enpro—manufactured and installed certain components of catalyst cooling unit.

contribution claims under TEX. CIV. PRAC. & REM.CODE ANN. §§ 33.015(a)[4] & 33.016(a).[5] Section 33.015(a) provides for contribution if a defendant who is jointly and severally liable under section 33.013 pays a percentage of the damages for which the defendant is jointly and severally liable greater than his percentage of responsibility, that defendant has a right of contribution for the overpayment against each other liable defendant to the extent the other liable defendant has not paid the percentage of damages found by the trier of fact equal to that other defendant's percentage of responsibility. TEX. CIV. PRAC. & REM.CODE ANN. § 33.015(a).

Section 33.016(a) defines "contribution defendant" as "any defendant, counterdefendant, or third-party defendant from whom a party seeks contribution with respect to any portion of damages for which that party may be liable, but from whom the claimant seeks no relief at the time of submission." TEX. CIV. PRAC. & REM.CODE ANN. § 33.016(a).

**Derivative Action**

■ Contribution is allowed in Texas only among joint tortfeasors. *See Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984). In order for CBI to have a right to seek contribution against UOP, UOP must have some real or potential liability in damages to the plaintiff, Fina. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 33.016(a). A defendant's claim of contribution is derivative of the plaintiff's right to recover from the joint defendant against whom contribution is sought. *Shoemake v. Fogel*, 826 S.W.2d 933, 935 (Tex.1992). Therefore, CBI has only a derivative right to seek contribution from UOP.

Both parties agree that any contribution claim CBI has against UOP is derivative of the claim Fina could bring against UOP. The parties disagree about (1) whether Fina has a common-law negligence claim against UOP allowing CBI to seek contribution from UOP, and (2) whether the limitation of remedies provision in the Fina/UOP contract applies to CBI's derivative claim.

**Common Law Negligence**

■ The only way TEX. CIV. PRAC. & REM. CODE ANN. chapter 33 could apply is if Fina had a negligence claim, breach of warranty claim under chapter 2 of the Business and Commerce Code, or a strict products liability claim against UOP. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 33.001(b).[6] CBI claims that Fina has a common-law negligence claim against UOP, independent of the contract.[7] When a party claims only economic injury to the subject matter of the contract itself, the action sounds in contract, not tort. *Southwestern Bell Tel. Co. v. DeLanney*, 809

---

**4.** TEX. CIV. PRAC. & REM.CODE ANN. § 33.015(a) (Vernon Supp.1997).

**5.** Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.11A, 1987 TEX. GEN. LAWS 40, 43–44 (amended 1995) [hereinafter § 33.016(a)].

**6.** Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.04, 1987 TEX. GEN. LAWS 40, 40–44, *amended by* Act of May 4, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 TEX. GEN LAWS 971.

**7.** The cases CBI cites in support of this proposition are distinguishable from this case. In *Romero v. Parkhill, Smith & Cooper, Inc.*, the court affirmed the summary judgment in favor of an engineering firm because it had no contractual duty to control job site safety, and therefore, owed no duty to an injured subcontractor's employee. 882 S.W.2d 522, 525 (Tex.App.—El Paso 1994, writ denied). In *I.O.I. Systems, Inc. v. City of Cleveland, Texas*, which was decided before both *Jim Walter Homes Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986), and *Southwestern Bell Tel.*

*Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991), this Court held that an architect's or engineer's duty depends on the particular agreement entered into by his employer. 615 S.W.2d 786, 790 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). *Ryan v. Morgan Spear Associates Inc.*, was decided long before either *DeLanney* or *Jim Walter Homes*. *Ryan* involves suing for breach of contract and in the alternative for negligent performance of a contract. In *Ryan*, the contract did not provide any special guarantees or warranties nor does it appear to have limited liability for warranties or damages as in this case. 546 S.W.2d 678, 681–82 (Tex.Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.). CBI seems to be arguing that an engineer cannot contractually limit his liability and is always subject to negligence claims, despite the fact that the claim arises from the duties imposed by a contract. We disagree. We also disagree with CBI's contention that TEX. CIV. PRAC. & REM.CODE ANN. § 33.001(c) mandates the conclusion that engineers are always liable for common-law negligence despite the terms of a contract.

S.W.2d 493, 494–95 (Tex.1991).[8] The claims Fina has asserted against CBI assert "only economic injury to the subject matter of the contract itself ... damages for repair, replacement, testing and loss of use and interference with the use of the cooling unit, loss of good will and lost profits." *See id.* Therefore, the damages CBI seeks as contribution deal with "the subject matter of the contract itself." *See Jim Walter Homes Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986).

■ If Fina had sued UOP, its claims would be limited to economic injury dealing with the subject matter of the contract itself. When a negligence claim is made alleging the breach of the very duties encompassed in a contract between the parties, the action is for breach of contract and not tort. *DeLanney,* 809 S.W.2d at 494–95. In *DeLanney,* the court held that when a party must prove the contents of its contract and must rely on the duties created therein, the action is in substance an action on the contract, even though it is denominated an action for negligent performance of a contract. *Id.* at 496.

CBI looks to section 7(f) of the contract between Fina and UOP, and claims that the language allows Fina to bring a negligence action for direct damages. We disagree in light of sections 7(a) & (e). In section 7 of the Fina/UOP contract, the parties expressly agreed to limit UOP's liability to Fina for any breach, loss or damage to reperformance. In article 7(a), the parties agreed that:

> *UOP's total liability in the event of any breach* of the foregoing warranty, or otherwise *for any losses, damages, claims* or demands *arising out of the work and services performed under this agreement, shall be limited to reperforming,* at UOP's expense, that portion of the work and services for which such breach or otherwise has occurred and provided that any such claim or demand shall be made in writing to UOP prior to the terminating of this agreement with respect to such Unit.

(Emphasis added.) In section 7(e), the parties further agreed to limit Fina's claims against UOP to only that property damage or bodily injury "arising out of the work or services performed under the agreement" that were "caused by the willful acts or negligence of UOP," and specified that "the only recovery allowed was that set forth in the rest of section 7," *i.e.,* section 7(a), reperformance. Therefore, the only direct damages recoverable by Fina against UOP for negligence is reperformance or the cost of reperformance after Fina provides UOP with written notice under the contract.

In section 7(f), the parties specifically provided that UOP would "in no event" be obligated to pay any kind of "special consequential or indirect damages, including by way of example but not by way of limitation, such damages as loss of use, loss of profits, plant or unit downtime or suits by third parties." Following basic tenets of contract law these provisions must be read together to comprehensively address the rights and obligations of the parties to the contract. *See Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 143 (Tex.1994).

■ Under the above contract provisions, if Fina had pursued UOP for negligence in designing the catalytic cooler, Fina would have been required to provide written notice to UOP of the negligent services performed. Then UOP would be obligated under the contract to reperform at UOP's expense, that portion of the work and services negligently performed. If UOP had not reperformed the work, then Fina would have been limited to a breach of contract claim for UOP's refusal to reperform the work under section 7(a). Because Fina's claim, if any, would have been for negligent performance of the contract, its claim against UOP would have been limited to a breach of contract claim. *See DeLanney,* 809 S.W.2d at 495. Because CBI's claim is derivative of Fina's, CBI's claim is also so limited. *See Amoco Chemicals Corp. v. Malone Serv. Co.,* 712 S.W.2d 611, 613 (Tex.

---

**8.** In *DeLanney,* the telephone company mistakenly cancelled its customer's advertisement. The customer sued for negligent performance of the contract and violation of the Deceptive Trade Practices Act. The court held that the duty to publish the advertisement arose solely from the contract and economic damages including lost profits were only for economic loss created by the failure of the telephone company to perform. *Id.* at 495.

App.—Houston [1st Dist.] 1986, no writ) ("contribution is not recoverable from a third party against whom the plaintiff has no cause of action").[9]

Every breach of contract should not become a tort action, particularly where no consumers are involved and there is no fraud or personal injury, but only economic injury arising out of the very duties imposed by the contract. A breach of contract claim is not a basis for contribution under chapter 33 of the Texas Civil Practice and Remedies Code. *See Bonniwell*, 663 S.W.2d at 818. Therefore, Chapter 33 of the Texas Civil Practice and Remedies Code does not apply.

**Limited Recovery**

■ CBI has sued UOP for damages only. The Fina/UOP contract prohibits recovery of damages. Even if Fina could bring a common-law negligence action against UOP, its recovery would be limited to reperformance of the negligent work. CBI's claims are derivative of Fina's. This situation is analogous with others in which the claimants action is derivative of a third party's claim.

For example, wrongful death and survival actions are derivative of the decedent's rights. *Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343, 345 (Tex.1992). Wrongful death action plaintiffs stand in the legal shoes of the decedent. *Id.* In wrongful death actions involving the Texas Tort Claims Act, Texas courts have held that because of the derivative nature of wrongful death claims, the survivors recovery or damages are limited to the $100,000 "one-person" cap damage award under the Texas Tort Claims Act, to which the decedent would have been limited. *See Harris County Hosp. Dist. v. Estrada*, 872 S.W.2d 759, 767 (Tex.App.—Houston [1st Dist.] 1993, writ denied) (Mirabal J., concurring); *Texas Dep't of Transp. v. Ramming*, 861 S.W.2d 460, 465 (Tex.App.—Houston [14th Dist.] 1993, writ denied). Analogously, CBI's contribution claim is derivative of Fina's. Fina is limited to requiring reperformance of negligently performed work under the contract. Fina could not sue UOP for damages under a negligence claim. Therefore, even if CBI could bring a tort claim, based on the derivative nature of CBI's claim, CBI's recovery is limited to that of Fina. Clear and

**Unequivocal Test** [10]

CBI argues that the language in the Fina/UOP contract is insufficient as a matter of law to negate a negligence action because it is not "clear and unequivocal" under *Chevron Oil Co. v. E.D. Walton Construction Co.*, 517 F.2d 1119 (5th Cir.1975). *See Rourke v. Garza*, 511 S.W.2d 331, 340–43 (Tex.Civ.App.—Houston [1st Dist.] 1974), *aff'd*, 530 S.W.2d 794 (Tex.1975); *K & S Oil Well Serv. v. Cabot Corp.*, 491 S.W.2d 733, 738 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.). The "clear and unequivocal" test does not apply to this case.

The cases cited above are distinguishable from this case, because they involve instanc-

---

**9.** CBI cites *Amoco*, as determinative of this case. It is distinguishable from this case. In *Amoco*, this Court held that "under Texas law, the rights of indemnity and contribution are derivative of the plaintiff's primary cause of action...." 712 S.W.2d at 611. Contrary to CBI's argument, *Amoco* does not hold that the only circumstance in which a contribution claim is barred is where the original claimant can never under any circumstances, assert a negligence cause of action against a third party.

*Amoco* involved a statute of limitations bar. *Id.* at 614. The running of a statute of limitations does not destroy a pre-existing liability, it merely deprives the plaintiff of the right to his claim. *Id.* Therefore, the existence of the cause of action provided a basis for a claim of indemnity. *Amoco* made a clear '[d]istinction between those cases in which no cause of action ever existed and those in which the cause of action is barred by limitation.' *Id.* at 614. In this case, the Fina/UOP contract prevents a tort cause of action from arising under the facts of this case between Fina and UOP. Because CBI's claim is derivative of Fina's, CBI does not have a tort cause of action, only a contract claim. Therefore, unlike *Amoco*, no tort cause of action exists, of which CBI can be deprived. Also, nothing in *Amoco* states that contractual limitations on causes of actions will not be given effect.

**10.** CBI contends the trial court held that the Fina/UOP contract must be construed under the "clear and unequivocal" test. However, the ruling CBI refers to, which is included as an exhibit to its reply brief, states that the language in the *CBI* contract is governed by the clear and unequivocal test; it does not rule on the UOP contract. In any event, the ruling is not in the transcript; therefore, we cannot consider it on appeal. *See* Tex.R.App. P. 50(d).

es where one party is seeking indemnification for its own negligence, rather than limiting its liability to others.[11] Neither this case nor the Fina/UOP contract involve the rule of law applied in *Chevron*,[12] *K & S* and *Rourke*. Under the Fina/UOP contract, UOP attempted only to limit its liability for an alleged breach of its duty, not to get indemnity or reimbursement from Fina. Therefore, the "clear and unequivocal" standard does not apply to the Fina/UOP contract or this case.

CBI cites *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644 (Tex.1996) for the proposition that despite the limitation of remedies provision in the Fina/UOP contract, CBI may maintain its contribution claim against UOP. *Amstadt* involved actions by homeowners against the home seller and the manufacturers of the plumbing systems under the Deceptive Trade Practices Act (DTPA). *See id.* at 649; TEX. BUS. & COM. CODE ANN. § 17.50(a)(1) (Vernon Supp.1997). The indemnity and contribution analysis in *Amstadt* relies exclusively upon the contribution and indemnity provision of the DTPA, and is not applicable to this case. *See id.* at 652; TEX. BUS. & COM.CODE ANN. § 17.555 (Vernon 1987). Although CBI points out that the DTPA indemnity provision incorporated general contribution policies, this case does not involve the special concerns of the DTPA and *Amstadt* for the protection of consumers. Therefore, *Amstadt* is inapplicable to this case.

**11.** In CBI's reply brief it cites *Manzo v. Ford* for the proposition that a contract should be strictly construed against its drafter. 731 S.W.2d 673, 675 (Tex.App.—Houston [14th Dist.] 1987, no writ). We do not question this general rule, particularly in a case such as *Manzo* where the drafters were the management company and the attorneys of the other party to the contract, the appellant. *Id.* However, *Manzo* also stands for the proposition that all provisions of a contract must be read together, in the context of the entire contract. *Id.* Furthermore, although *Manzo* allows a breach of contract claim and a tort claim, the case involves intentional torts lacking from this case, including fraud in the inducement. *See id.* *Manzo* reiterates the rule of law that where the cause of action may not be maintained without proving the contents of the contract, and the gist of the action is for breach of contract whether by malfeasance or nonfeasance, it is an action on the contract. *Id.* at 677. This

**Conclusion**

Therefore, we overrule CBI' sole point of error, and affirm the judgment.

MIRABAL, J., dissenting.

MIRABAL, Justice, dissenting.

I dissent.

We are asked to construe chapter 33[1] of the Texas Civil Practice and Remedies Code, the "Comparative Responsibility" and "Contribution" statute. This statute governs the rights to contribution among liable parties in actions based on (1) negligence, (2) products liability grounded in negligence, (3) strict tort liability, (4) strict products liability, or (5) breach of warranty claims under chapter 2, Texas Business & Commerce Code. TEX. CIV. PRAC. & REM.CODE ANN. §§ 33.001 and 33.011 (Vernon 1987). The legal issues we are faced with are:

1. Does this case involve a claim grounded in *tort* (bringing it within chapter 33) or does it involve a claim only for *breach of contract* (and therefore not within chapter 33)?

2. If it does involve a claim grounded in tort, does a limitation of liability provision in plaintiff's contract with one tortfeasor prevent another tortfeasor from seeking contribution?

The third-party defendant (UOP) moved for summary judgment on the grounds that, assuming everything in the third-party plaintiff's (CBI's) petition was true, CBI was still

is true even though it is labeled an action for negligent performance of the contract. *Id.*

CBI also cites *Fireman's Fund Ins. Co. v. Commercial Standard Ins. Co.*, 490 S.W.2d 818, 822–23 (Tex.1972). That case is distinguishable because it involves an owner seeking indemnity from a contractor for its own negligence.

**12.** The sole issue in the *Chevron* case was whether a contractor is contractually obligated to indemnify an owner for payments for injuries to the contractor's employee resulting from the sole negligence of the owner. *Id.* at 1120. The case applies the Texas rule that a contract of indemnity will not afford protection to the indemnitee against the consequence of its own negligence unless the contract clearly expresses such an obligation in unequivocal terms. *Id.*

**1.** As noted by the majority, the 1987 version of chapter 33 applies to this case.

not entitled to judgment as a matter of law. Therefore, this Court must accept as true every material allegation in CBI's petition. *Abbott v. City of Kaufman,* 717 S.W.2d 927, 929 (Tex.App.—Tyler 1986, writ dism'd w.o.j.); *Gottlieb v. Hofheinz,* 523 S.W.2d 7, 10 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ dism'd w.o.j.). Accordingly, we presume that (1) Fina entered into an "Engineering Agreement" with UOP under which UOP agreed to furnish Fina engineering design specifications and installation procedures for a fluidized catalytic cracking unit (FCCU); (2) UOP's design and installation specifications were defective; (3) Fina contracted with CBI to construct a portion of the FCCU in accordance with UOP's design and installation specifications; (4) CBI followed UOP's design and installation specifications; and (5) because UOP's design and installation specifications were defective, the FCCU failed.

Fina did not sue UOP. Fina sued CBI for over $17 million. CBI filed a third party claim against UOP alleging negligent design and seeking contribution in the event Fina recovers a judgment against CBI.

The first ground asserted in UOP's motion for summary judgment was that Fina could not sue UOP for a tort, and therefore chapter 33 does not apply and CBI has no right of contribution against UOP. UOP argued that it had a contract with Fina; any negligent design claim would arise out of that contract; and therefore the action would sound *in contract,* not tort. UOP relied on *Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493 (Tex.1991).

Contrary to UOP's claim, *DeLanney* supports CBI's position. In *DeLanney,* a customer sued Southwestern Bell Telephone Co. for failing to publish an advertisement in the Yellow Pages. 809 S.W.2d at 493. The customer alleged negligence and violation of the the Deceptive Trade Practices Act (DTPA).[2] *Id.* at 493. The supreme court held that Bell's failure to publish the ad was not a tort, reasoning:

> If the defendant's conduct—such as negligently burning down a house—would give rise to liability independent of the fact that

a contract [to repair a water heater] exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct—such as failing to publish an advertisement—would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract. *Of course, some contracts involve special relationships that my give rise to duties enforceable as torts, such as professional malpractice.*

*Id.* at 494 (emphasis added). In his concurring opinion, Justice Doggett observed:

> The court does recognize that in some as yet unspecified instances a tort action may lie between contracting parties. It appropriately observes that a tort action may arise based upon a number of relationships that could be created by contract. Although the court offers only one example of a contractual relationship creating duties the breach of which gives rise to actions both in tort and contract (the relationship between a professional and client), our developing jurisprudence recognizes others.... In addition, the court correctly recognizes that the breach of certain common-law duties creates liability in tort; the existence of a contract does not alter those duties.
>
> It is thus incumbent upon the trial courts not to begin and end their inquiry with the contract but to examine the circumstances surrounding the parties' relationship, including any duties imposed by law, in determining whether a tort action may be maintained.

*DeLanney,* 809 S.W.2d at 500 (Doggett, J. concurring).

In the present case, the contract between Fina and UOP involved a special relationship with professionals. Engineers or architects must use the skill and care in the performance of their duties commensurate with the requirements of their profession, and are liable for a failure to exercise reasonable care and skill commensurate with those requirements. *Romero v. Parkhill, Smith & Cooper, Inc.,* 881 S.W.2d 522, 525 (Tex.App.—El Paso 1994, writ denied). *I.O.I. Sys., Inc. v.*

---

**2.** Tex. Bus. & Com.Code Ann. § 17.50(a)(1) (Vernon    Supp.1997).

*City of Cleveland,* 615 S.W.2d 786, 790 (Tex. Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). It is clear from *DeLanney* that the special relationship between an engineer and a client gives rise to duties enforceable as torts, such as professional malpractice, just as special relationships involving other professionals who are licensed by the state give rise to such duties. The "Comparative Responsibility" and "Contribution" statute itself recognizes the existence of such torts in Section 33.001(c).

> In an action in which a claimant seeks damages for harm ... arising out of negligence, *including but not limited to negligence relating to any professional services rendered by an architect, attorney, certified public accountant, real estate broker or agent, or engineer licensed by this state,* a claimant may recover damages only if his percentage of responsibility is less than or equal to 50 percent.

TEX. CIV. PRAC. & REM.CODE ANN. § 33.001(c)(Vernon 1987) (emphasis added).

I would hold that UOP's first ground for summary judgment has no merit. In my opinion, assuming, as we must here, that UOP delivered defective engineering design specifications and defective installation procedures to Fina, Fina would have a cause of action against UOP for the torts of negligence and professional malpractice, and not just a claim for breach of contract. Therefore, chapter 33 of the Civil Practice and Remedies Code does apply, and CBI may have a right of contribution against UOP.

As an alternative ground for summary judgment, UOP asserted that the provisions in the Fina/UOP contract, regarding limitation of liability and limitation of remedies, prevent CBI from obtaining contribution from UOP in the event Fina is granted a judgment against CBI.

Paragraph 7(e) of the agreement reads in part:

> UOP shall not be responsible or liable for property damage or bodily injury arising

out of the work and services performed under this agreement *unless caused by the willful acts or negligence of UOP.*

(Emphasis added.) UOP concedes that, if Fina sued UOP for negligence under the contract, and UOP was found to be negligent in the case, Fina would be entitled to recover *something* under the contract. UOP simply argues that provisions in the contract limit the extent of recovery to which Fina would be entitled.[3]

Assuming, as we must, that UOP was negligent in providing defective designs and procedures, Fina has the right to sue UOP, and therefore CBI has the derivative right to seek contribution from UOP. *Amoco Chems. Corp. v. Malone Serv. Co.,* 712 S.W.2d 611, 613–14 (Tex.App.—Houston [1st Dist.] 1986, no writ); TEX. CIV. PRAC. & REM.CODE ANN. § 33.016(a), (b) (Vernon Supp.1997). Accordingly, UOP's alternative ground for summary judgment is without merit.

I would sustain CBI's sole point of error, reverse the summary judgment, and remand the case to the trial court.

---

3. UOP asserts UOP's liability would be limited to reperforming, at UOP's expense, the work or services performed negligently. The record does not reveal the value of the expense that would be incurred in preparing new and proper engineering design specifications and installation procedures. The cost could be in the millions of dollars. It is not necessary to decide in this appeal the extent to which CBI could be limited in its recovery against UOP, if any.