

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-12-00437-CV

PATTILOU P. DAWKINS, APPELLANT

V.

FIRST AMERICAN TITLE COMPANY, LLC, APPELLEE

On Appeal from the 181st District Court
Randall County, Texas
Trial Court No. 64,422-B, Honorable Leland W. Waters, Presiding

September 11, 2014

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant Pattilou P. Dawkins sued appellee First American Title Company, LLC alleging it negligently failed to discover tax liens attached to a residence on which she foreclosed and subsequently attempted to resell. The trial court granted First American's traditional motion for summary judgment on the duty element of Dawkins' case. We find First American did not meet its summary judgment burden on the duty ground. However, we will affirm the judgment under the economic loss rule.

## Background

Dawkins retained the law firm Burdett, Morgan, Williamson & Boykin, LLP to assist her in foreclosing her deed of trust lien on the residential property in Amarillo. In July 2010, via e-mail, the law firm ordered from First American an "updated title report." The request indicated First American's "last report" was dated June 21, 2010. It further identified the property owners as "Trey Turner & Yesenia Turner."

First American responded by providing a two-page document dated July 29, 2010. The document has the appearance of being computer-generated. It contains notations identifying it as a "runsheet." After some identifying information, the run sheet contains a list of recorded documents affecting title to the property, beginning with the deed from Dawkins to the Turners. First American's e-mail forwarding the run sheet refers to it as an "updated title run."

Under the heading "search criteria," the run sheet lists a "search #1," containing the legal description of the property. It also lists "search #2," containing the heading "names as grantor & grantee," followed by the names "Turner Trey" and "Turner Yesenia" and eight additional variations of those names, including "Turner, Yesenia M."

The summary judgment record also includes a similar run sheet bearing the date June 21, 2010. The June 21 run sheet contains most, but not all, of the name variations listed in the July 29 update. The law firm paid First American about $100 for its service.

In the list of documents appearing of record, both the June 21 and July 29 run sheets report a Texas state tax lien under the names "Trace W. Turner," "Yesenia M. Turner" and "Exquisite Specialty Painting." First American also provided the law firm

2

with a "complimentary" copy of the recorded notice of state tax lien, bearing those three names, and addressed to them at the residence address.

Dawkins completed the foreclosure and acquired the property, but later learned it was encumbered by federal tax liens against "Trace Wayne Turner." Dawkins filed suit against First American asserting the company "made two mistakes during its creation of the title report. First, [First American] should have searched for similar names in case the owners had 'a/k/a' names. Second, when the state tax lien that [First American] discovered revealed a lien against Trace and Yesenia Turner, [First American] should have taken note and searched specifically for the name 'Trace Turner.'" Asserting a single cause of action for negligence, Dawkins' petition alleged First American owed her "a duty to perform its work [in] a manner that a reasonably prudent title company would have done under the same or similar circumstances . . . . Certain, if not all, of [the] acts and/or omissions of [First American] described herein fell below the standard of care and violated the duty [First American] owed to [Dawkins]."

First American filed a traditional motion for summary judgment. Among other grounds, it asserted that the scope of its duty was defined by its contract with the law firm and it owed the law firm's client Dawkins no independent duty to perform in a non-negligent manner, and asserted any claim sounding in tort was barred by the economic loss rule. The trial court rendered summary judgment for First American. Its order recites findings that "as a matter of law [the law firm] requested a Title Run, not a full Title Report or Title Insurance, and there is no genuine issue of fact as to what was requested; . . . once the name Trace W. Turner appeared on the Run Sheet, there was no duty on the part of First American to search further for a Federal Tax Lien using the

3

name Trace W. Turner; and . . . First American owed no duty under the contract or otherwise to perform an evaluation of the adequacy or sufficiency of search parameters in generating the Title Run." The trial court made no ruling on First American's defense that Dawkins' negligence claim was barred by the economic loss rule.

Analysis

Dawkins' first and second issues address the trial court's summary judgment based on the absence of a duty.

We review a summary judgment *de novo*. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). When summary judgment is granted on a traditional motion, we adhere to the following rules:

> (1) The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts must be resolved in favor of the nonmovant.

*Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex. 1997) (citing *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548-49 (Tex. 1985)); TEX. R. CIV. P. 166a(c). A defendant moving for summary judgment on a traditional motion is entitled to summary judgment if it conclusively negates one essential element of the plaintiff's cause of action. *Little v. Tex. Dep't of Crim. Justice,* 148 S.W.3d 374, 381 (Tex. 2004) (citing *Randall's Food Mkts. v. Johnson,* 891 S.W.2d 640, 644 (Tex. 1994)).

"The elements of negligence are the existence of a duty on the part of one party to another, a breach of that duty, and damages proximately caused by the breach of

4

that duty."  *Nw. Mall, Inc. v. Lubri-Lon Int'l, Inc.,* 681 S.W.2d 797, 802 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).  A duty "is a legally enforceable obligation to comply with a certain standard of conduct."  *Hand v. Dean Witter Reynolds Inc.,* 889 S.W.2d 483, 491 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (citing *Way v. Boy Scouts of Am.,* 856 S.W.2d 230, 233 (Tex. App.—Dallas 1993, writ denied)).  "Duty is the threshold inquiry; a plaintiff must prove the existence and violation of a duty owed to him by the defendant to establish liability in tort."  *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex. 1987).  "In determining whether the defendant was under a duty, the court will consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant."  *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990) (citing *Otis Engineering Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex. 1983)).

The existence of a duty presents a question of law while the existence of facts giving rise to a duty is a question of fact ordinarily incapable of resolution as a matter of law by summary judgment.  *Barnes v. Wendy's Intern., Inc.,* 857 S.W.2d 728, 729 (Tex. App.—Houston [14th Dist.] 1993, no writ); *see Union Pac. R.R. Co. v. Williams,* 85 S.W.3d 162, 168 (Tex. 2002) (reaffirming in FELA case the decision in *Mitchell v. Missouri-Kansas-Texas R.R. Co.,* 786 S.W.2d 659 (Tex. 1990) to the extent it held disputed evidence of foreseeability as related to duty presents question for resolution by fact-finder).  Whether a defendant breached a duty ordinarily presents a question of fact.  *Caldwell v. Curioni,* 125 S.W.3d 784, 793 (Tex. App.—Dallas 2004, pet. denied)

5

(citing *Rudolph v. ABC Pest Control, Inc.,* 763 S.W.2d 930, 933 (Tex. App.—San Antonio 1989, writ denied)).

The parties acknowledge in general terms that a duty of ordinary care applied to First American's provision of the service the law firm requested. Their descriptions of the duty vary significantly, however. According to its brief, "First American has never denied a duty to exercise ordinary care in accurately performing the search using the property and names given as well as the typical name variants disclosed by First American as having been searched." First American thus argues its duty is limited to that of performing accurately the search its run sheet says it performed.[1] Since its run sheet did not represent that it performed a search for documents under the name Trace W. Turner, in its view no duty arises with respect to a search under that name. Dawkins' brief similarly asserts, "[First American] had a duty to exercise ordinary care in providing the information service . . . ." But Dawkins points to the fact First American's search encompassed not only the names the law firm provided but variations of those names that First American chose to include in its search criteria. She argues the title company's duty of ordinary care extended to its process of selecting the variations under which it would search. Dawkins thus sees First American's duty as including one to "evaluate the adequacy of search terms used" in its search. Dawkins further argues that once the name Trace W. Turner appeared with Yesenia M. Turner under the state

---

[1] It is not clear to us whether First American considers that its duty of ordinary care runs to Dawkins or stops with the law firm. As noted, it elsewhere asserts that its duties were entirely governed by its contract with the law firm. The distinction is not important to our disposition of Dawkins' appellate issues.

6

tax lien on its run sheet, ordinary care required that First American include it in the search criteria.

The trial court found that, as a matter of law, the law firm "requested a Title Run, not a full Title Report or Title Insurance." According to the affidavit of Deborah Strother, First American's division president and county manager, by experience she is familiar with "all aspects of the title company operation."[2] This includes "providing information from public record through abstracts of title, title reports, and title runs." In her opinion, a "title search produces a printout often called a 'title run' that lists provided search terms, spelling variants that are included by the title company manually or as supplied by computer program, and other information on top of the page and then lists documents of record without comment[.]" Distinguishing a "title run" from a "title report," Strother further averred "a title report is a distinctly different format comprised of a narrative report that states the current status of title reflected in the documents of record." In her opinion, the June 21, 2010 "report" to the law firm was a "title run," as was its update of July 29. She points out that the law firm initially accepted the "title run" without complaint.

Countering Strother's opinion of the service First American was obligated to deliver is the opinion of the law firm's attorney Sam Karr. According to Karr's affidavit, the June 21 and July 29 documents are "title reports." Based on his experience as an attorney conducting foreclosures and other real estate transactions, Karr asserts that

---

[2] "A title company is defined as '[a] company that examines real-estate titles for any encumbrances, claims, or other flaws, and issues title insurance,' usually on behalf of the title insurance company." *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.,* 60 A.3d 1, 5 (Md. 2013) (quoting Black's Law Dictionary 299 (8th ed. 2004) and citing Barlow Burke, Law of Title Insurance § 1.02[C] (3d ed. Supp. 2012)).

"[i]t is the common practice of title companies who provide these reports to . . . real estate attorneys to search for all alternate names that appear during a search and to include these names and any documents located in the report." Karr points out that the documents of June 21 and July 29 indicate First American searched names not provided by the law firm, and show that First American "was aware of the alternate name of Trace W. Turner," but did not conduct a search under that name. In Karr's opinion, "[i]t is customary and reasonable for a title company to perform such a search and for real estate attorneys to expect this to be done."

To an extent, First American's run sheets fit Strother's definition of a "title run." And there is no dispute that the run sheets accurately list the name variations under which First American conducted its search. But the list of name variations reflected in the search criteria on the July 29 run sheet, expanded from those listed on the June 21 version, also suggests that First American's service included more than simply searching for documents under the names provided by the law firm and certain disclosed spelling variants of those provided names. And Strother's affidavit tells us that First American may manually modify the search criteria.

Accepting the parties' agreement that First American owed a duty of ordinary care in preparation of its run sheets, the summary judgment record here does not provide the court a basis to conclude that First American's view of the duty is correct as a matter of law and Dawkins' view incorrect. The record shows merely that Strother has one idea of the parameters of the company's duty, based on her experiences, and Karr

has another, based on his experiences.[3] Their competing affidavits do not provide a sufficiently complete picture of the risks and foreseeability of injury, the utility of the parties' conduct to the commercial purpose of their transaction, the burdens of guarding against the injury and the consequences of placing those burdens on the title company to permit us to evaluate the imposition of a duty under tort law. *Greater Houston*, 801 S.W.2d at 525; *see, e.g., Del Lago Ptnrs. v. Smith*, 307 S.W.3d 762, 767-69 (Tex. 2010) (analysis leading to conclusion that duty existed under the law). The scope of First American's asserted duty is not conclusively established, and we cannot agree with the trial court's conclusion summary judgment for First American was proper on its duty ground.

But this determination does not end our analysis. The present case presents a somewhat uncommon situation. Rather than merely granting the requested summary judgment, the order the trial court signed specified the ground for its decision, duty. As movant for summary judgment, First American also urged that Dawkins' action in negligence was barred by the economic loss rule. As noted, the trial court made no ruling on that ground. In reviewing a trial court's summary judgment in this form, an appellate court:

> Should consider all summary judgment grounds the trial court rules on and the movant preserves for appellate review that are necessary for final disposition of the appeal [and] may consider other grounds that the movant preserved for review and trial court did not rule on in the interest of judicial economy.

---

[3] Nothing in the summary judgment record establishes a definition accepted in the industry for such key terms used by the parties and trial court as "title report," "full title report," "run sheet," and "title run."

9

*Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex. 1996). In the present case, the parties briefed the economic loss rule in this court, and we find this ground preserved for our review.

We turn then to the economic loss rule.[4] In general, "a duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim." *Wansey v. Hole,* 379 S.W.3d 246, 248 (Tex. 2012) (per curiam) (quoting *Sterling Chems., Inc. v. Texaco Inc.,* 259 S.W.3d 793, 796 (Tex. App.— Houston [1st Dist.] 2007, pet. denied)); *see Chapman Custom Homes, Inc. v. Dallas Plumbing Co.,* No. 13-0776, 2014 Tex. LEXIS 690, at *5 (Tex. Aug. 22, 2014) (explaining "a party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit"); *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex. 1986) ("When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone"); *Bass v. City of Dallas,* 34 S.W.3d 1, 9 (Tex. App.— Amarillo 2000, no pet.) (explaining "if a contractual duty is negligently performed,

---

[4] The Supreme Court of Texas has noted the term "is something of a misnomer*." Sharyland Water Supply Corp. v. City of Alton,* 354 S.W.3d 407, 415 (Tex. 2011). The court then quoted Vincent R. Johnson, *The Boundary-Line Function of the Economic Loss Rule,* 66 Wash. & Lee L. Rev. 523, 534-35 (2009), "[T]here is not one economic loss rule broadly applicable throughout the field of torts, but rather several more limited rules that govern recovery of economic losses in selected areas of the law." *Id.* The court recently added, "Another scholar also thought there was no single 'economic loss rule' but instead a 'constellation of somewhat similar doctrines that tend to limit liability' that seemed to work in different ways in different contexts, for not necessarily identical reasons, 'with exceptions where the reasons for limiting liability were absent.' Oscar S. Gray, Some Thoughts on The Economic Loss Rule" and Apportionment, 48 Ariz. L. Rev. 897, 898 (2006) ("The core concept of this constellation, not quite a 'rule', seems to me to be an inhibition against liability in negligence for economic harm not resulting from bodily injury to the claimant or physical damage to property in which the claimant has a proprietary interest.") (footnotes omitted). *LAN/STV v. Martin K. Eby Constr. Co.,* 2014 Tex. LEXIS 509, at *4-5 n.4 (Tex. 2014).

causing only economic loss, only a breach of contract action may be maintained, and an action in tort for negligence is precluded"); *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.,* 29 S.W.3d 282, 288 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing W. Page Keeton et al., Prosser & Keeton on the Law of Torts, § 92, at 657 (5th ed. 1984) (stating "generally speaking, there is no general duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things")). "The rule serves to provide a more definite limitation on liability than foreseeability can and reflects a preference for allocating some economic risks by contract rather than by law." *LAN/STV*, 2014 Tex. LEXIS 509, at *1.

Texas courts apply the economic loss rule in cases involving defective products and the failure to perform a contract. *Sharyland,* 354 S.W.3d at 418. And in its very recent opinion in *LAN/STV*, the Texas Supreme Court noted our courts of appeals "have uniformly applied the economic loss rule to deny recovery of purely economic losses in actions for negligent performance of services." *LAN/STV,* 2014 Tex. LEXIS 509, at *29 (citing, *inter alia*, *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.,* 29 S.W.3d 282 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (applying economic loss rule where parties were contractual strangers and no accompanying claim for personal injury or property damages was presented)).

To determine whether the plaintiff's claim sounds in tort or contract the focus is on the substance of the cause of action and not simply the manner in which it was pleaded. *Mickens v. Longhorn DFW Moving, Inc.,* 264 S.W.3d 875 (Tex. App.—Dallas 2008, pet denied) (citing *Reed,* 711 S.W.2d at 618). "When a negligence claim is made

11

alleging the breach of the very duties encompassed in a contract between the parties, the action is for breach of contract and not tort." *CBI NA-CON, Inc. v. UOP, Inc.,* 961 S.W.2d 336, 340 (Tex. App.—Houston [1st Dist] 1997, pet. denied) (citing *DeLanney,* 809 S.W.2d at 494-95).

The foundation of Dawkins' complaint here is that because First American failed to carry out the duties it undertook in its contract with the law firm, a federal tax lien was not detected before foreclosure. The tax lien thus burdened the title she acquired. She claims no injury other than the economic loss occasioned when she was required to pay a tax liability that was not hers in order to obtain the clear title. In light of the controlling Texas authorities, this case, although cast in negligence by the pleadings, is one claiming a purely economic loss in an action for negligent performance of a service. It is therefore precluded by the economic loss rule.

Conclusion

While the trial court erred in rendering summary judgment on the duty ground, we affirm its judgment under the economic loss rule.


James T. Campbell
Justice

12